STEPHEN MORSE *et al. v.* FRANCIS SLASON, ALBERT LANG-
DON AND WM. C. DENISON.

## *(In Chancery.)*

Whenever an estate is in the process of settlement in the probate court,
and the administrator has a claim to any portion of the property, claimed
by the creditors as belonging to the estate, and the claim of the admin-
istrator is adverse to that of the creditors, it is competent for the credit-
ors to resort to a court of chancery to have this controversy settled; and
if the court of chancery decree against the administrator, they fix the
amount for which he is chargeable, on account of such property, and re-
quire him to charge himself with that amount, in rendering his account
in the probate court; and the probate court still retains the entire con-
trol of the settlement of the estate, and the proceeding in chancery is
merely in aid of the probate court.

It is competent for a debtor, who is largely indebted, and insolvent, even,
to prefer any of his *bona fide* creditors. This he may do, too, by a deed of
real estate, duly executed and delivered to a third person, in trust, to be
delivered to the grantee, at the decease of the grantor, unless he shall
otherwise direct, during his life time.

If no subsequent direction be given, the deed, upon the decease of the gran-
tor, takes effect from the first delivery.

If, about the time a deed is shown to be executed and delivered, the
grantor appears generally sane, and in possession of sufficient power of
mind to comprehend business of that character and extent, the burden of
proof rests upon those who would avoid the deed, on the ground of in-
sanity or imbecility of mind.

When this court reverse the decree of the court of chancery, and order
further proceedings in the case, the case is to be remanded to that court,
with the mandate of this court, directing in what manner to proceed.

THIS was an appeal from a decree of the court of chan-
cery, dismissing the orators' bill.

The orators, Stephen Morse, Allen Vail and Micha Vail,
in behalf of themselves and other creditors of Hoit Guernsey,
late of Poultney, in the county of Rutland, deceased, set
forth and charged in their bill of complaint, in substance,
that the said Hoit, in his life time, for many years previous
to the 8th day of December, 1834, had been in extensive
business in manufacturing woollen goods, buying wool, &c.,
at said Poultney, and, at the time of his death, owed large
debts to the orators and others, and to certain banks, which
were contracted in the prosecution of said business, to the
amount of fifty thousand dollars, or more; that he died

about nine o'clock in the morning of the 8th of December, 1834; that about a month previous to his decease, he was taken sick of a fever which caused his death; that during the greater part of his sickness, he was wholly incapable of transacting any business understandingly, which incapacity was produced by his disease; that while he was so incapable of transacting business, to wit, on the 19th of November, 1834, he was prevailed upon, by some means, to the orators unknown, to execute a deed of warranty to the defendants, Slason & Langdon, conveying to them certain lands, in Poultney, (describing them) with a woollen factory, and other buildings thereon, and the machinery in said factory, the consideration of which deed was twelve thousand dollars, and the deed was absolute in its terms; that said deed was drawn by Chauncey Guernsey, the father of the deceased, and executed in the absence of the said Slason and Langdon, and was not, at the time of its execution, delivered to either of them, but was then delivered to said Chauncey Guernsey, under an express understanding, trust and agreement, that, in case the said Hoit should recover from said sickness, then the deed should not be delivered to said Slason and Langdon, or either of them, but should be delivered back to said Hoit, and become inoperative; that no money or other consideration was paid, or agreed to be paid, by said Slason and Langdon, for said deed, either at the time of its execution or afterwards; that said deed remained in the hands of said Chauncey until after the death of the said Hoit, and was not delivered to either said Slason or Langdon, until the eleventh day of December, 1834, at which time it was delivered and recorded in the town clerk's office, in Poultney.

And the orators further set forth and charged, that the said Hoit, at the time of his death, owned and possessed thirty thousand pounds of wool, a large quantity of woollen cloths, finished and unfinished, wool yarn, dye stuffs, &c., of the value of eighteen thousand dollars; that the said Hoit continued in the business of manufacturing cloths and merchandize until his death; that, immediately after his death, the said Slason and Langdon took possession of all the real and personal estate aforesaid, and have ever since continued in possession thereof, and have been engaged in manufactur-

RUTLAND, February, 1841.

Morse et al, v. Slason et al

ing cloths in said factory ; that, immediately after the death of the said Hoit, to wit, on the same day, the said Slason and Langdon took possession of all of said wool and other personal property above mentioned, without having purchased, or having the same delivered to them by the said Hoit, in his life time, as of their own personal estate, and used the same in and about the business of manufacturing and selling cloths for their own use and benefit ; that, on the 11th day of December, 1834, the said Slason and Wm. C. Denison, were duly appointed administrators of the estate of the said Hoit, by the probate court, for the district of Fairhaven, and accepted said trust ; that the said administrators represented said estate insolvent, and, after having inventoried goods, wares, and merchandise, to the amount of $6000, wholly neglected, and refused to cause an inventory and appraisal to be made of said real estate and of said thirty thousand pounds of wool, and the residue of said personal estate, as a part of the estate of said Hoit, and that the said Slason and Langdon claimed the said real and personal estate, not inventoried, as their own, and refused to account therefor as a part of said Hoit's estate. And the orators prayed that the deed, executed by the said Hoit to the said Slason and Langdon, be decreed null and void, and that the said real estate be held as assets in the hands of said administrators, for the payment of the debts of the said deceased, and that said wool and other personal property, used in said factory, by said Slason and Langdon, not inventoried, be also decreed to be assets for the same purpose ; that the said Slason and Langdon surrender up the possessession thereof to said administrators, and account therefor ; that said administrators file an inventory thereof, and for further relief.

The defendants, Slason and Langdon, by their answers, admitted the facts charged in the bill, relating to the business of said Hoit Guernsey, as a manufacturer, and of his being largely indebted to sundry persons and banks ; that he executed said deed to these defendants, on the said 19th of November, 1834, but denied his incapacity to transact business understandingly, during the greater part of his sickness, and, particularly, at the time of executing said deed, and insisted that it had been agreed between them and said Hoit, long before the sickness of the latter, that they were to be

secured for the whole amount of their liabilities for said Hoit; that, although said deed was, by its terms, absolute, yet, it was understood that these defendants, on a final set- tlement with said Hoit, were to allow for the property there- by conveyed such sum as the premises were worth; they denied that the deed was never delivered until after the death of said Hoit, and insisted that it was delivered immediately after its execution, to Chauncey Guernsey, who received it as the agent of these defendants, and handed it to the defend- ant, Slason, previous to the death of said Hoit; they also denied that there was any secret agreement, or implied un- derstanding, that, in case said Hoit recovered from his sick- ness, the said deed was to be re-delivered to him and become inoperative; they also set forth the personal property not in- ventoried, specifically, and insisted that the said Hoit, in pursuance of his often expressed intention of securing them, as they were informed and believed, previous to his death, did assign and make over, and direct to be assigned and made over the personal property, last mentioned, to these defend- ants, and that the same was so assigned, by the said Hoit, in his lifetime, while in possession of his mind and capacity to make contracts, to secure them for their liabilities for said Hoit; that, after such assignment, the defendant, Langdon, before the death of said Hoit, took possession of said perso- nal estate, for the use and benefit of these defendants, to se- cure them as aforesaid, and denied that they, or either of them, took possession of said property without the leave of, or any purchase from, said Hoit, in his lifetime. And these defen- dants set forth, particularly, the amount of their liabilities for the said Hoit, which they had paid, and the value of said real and personal estate, as adjudicated and settled by the commissioners of insolvency upon the estate of the said Hoit, leaving a balance due these defendants, from said estate of more than five thousand dollars; and they admitted that said Slason and Denison had taken administration of the estate of said Hoit, as charged in the bill, and denied all fraud, &c.

The answer of the other defendant, Denison, is not ma- terial to the issues tried.

The answers were traversed, and testimony was taken, both on the part of the orators and the defendants.

The facts found by the court sufficiently appear from the opinion of the court.

*J. Clark and Wm. Upham,* for orators.

I. The remedy in this case is in chancery.

1. Administrators and executors are trustees, holding property for the benefit of the creditors and heirs of the deceased.

The statute in giving jurisdiction to the probate court has infringed upon the established precincts of equity, but has not taken away its jurisdiction. *Greenside* v. *Renson,* 3 Atk. 248. 1 Madd. Ch. 85, 244. 2 Ib. 181. 3 Peters, 215. *Mundy* v. *Mundy,* 2 Ves. Junr. 128. 1 Vernon, 421. *Curtis* v. *Curtis,* 2 Brown's C. R. 631.

2. Langdon not being joined in the administration, the remedy at law, on the probate bond, would not have been as full and complete as in chancery. Langdon would be a stranger to a suit on the administration bond. Parties are entitled to the most full and complete remedy. 1 Madd. Ch. 85. 1 Paige, Ch. R. 90. 1 Term R. 489. *Bois' exr's.* v. *Grundy,* 3 Pet. R. 210.

3. In a suit at law for embezzlement, Slason would have been both plaintiff and defendant. Statute, 347.

4. This court took cognizance of a cause in which the remedy at law was ample and more full than could be here. *Sparhawk et al.* v. *Adm. of Buel,* 9 Vt. R. 41. Opinion 81. *Mead et al.* v. *Langdon,* decided in Washington county 1835.

5. This is a case where a discovery is emphatically necessary in the respect that account as well as fraud is involved. 4 Johns. Ch. R. 631. 1 Madd. 110. 1 Paige's Ch. R. 384. 9 Johns. R. 470. 2 Johns. Ch. R. 35. 2 Brown's Ch. 631.

6. A bill can be sustained by the orators in behalf of themselves and other creditors. 2 Madd. 181. 2 Vern. 420. 2 Brown's C. C. 338. 1 Id. 101. 2 Ves. 313. 13 Ibid. 397. *Penfield* v. *Skinner,* 11 Vt. R. 296.

7. The objection that the orators have an adequate remedy at law comes too late. 3 Paige, 313. 4 Cowen, 717. 2 Johns. 367. 4 Id. 290.

II. The deed, by force of which two of the defendants claim title to the real estate, factory and machinery of which

Hoit Guernsey (at least) died possessed, and, as we say, well seized, is wholly insufficient under all the circumstances attending it, to pass the title, for,

1. It will be borne in mind, that the orators stand in the light and position of creditors to the estate of Guernsey, and as such have a right to claim all the benefit to which creditors are entitled, and if it should eventually turn out that the defendants, or any of them, are creditors also, they would come in under an equitable distribution.

2. When a person is proved to have been once *insane* the burthen of proof is on those who would set up and establish the act of such person, as having been done and performed during a lucid interval.    *Groom et al.* v. *Thomas et al.*, 4 Eng. Ecc. R. 181.    *Attorney General* v. *Parnther*, 3 Brown's Ch. Cases, 443, cited in the case of *Groom et al.* v. *Thomas et al.*, cited also in 3 Starkie, 1703, and n. 5 Johns. R. 159.    The rule is that when the capacity is doubtful, at the time of execution, mere evidence of the execution is insufficient.    *Billinghurst* v. *Vickens*, 1 Eng. Ecc. R. 72.

3. From a consideration of the testimony, it is very evident that Guernsey at the time of the execution of the deed, (if he executed it at all), was incapable of making that mental effort which was necessary to comprehend the transaction in all its bearings.    The law is established, and all the decisions agree, that it is the competency of the person to do the business under consideration that is to be the subject of inquiry. *Marsh* v. *Tyrrell & Hardin*, 4 Eng. Ecc. R. 33.    Swinbourn, p. 7, s. 2.    Moore's R. 759.    *Marquis of Winchester's case*, 6 Co. 23.    2 Es. N. P. 56.    *Hall* v. *Warren*, 9 Ves. Jun. 611.    5 Johns. Ch. R. 148, 158.

III. The circumstances attending the execution (if ever executed) and the acknowledgement of this deed, are strong *indicia* of fraud.

1. The deed is absolute in its terms, conveying an unqualified and unconditional estate to the grantees.    1 Swift's Dig. 274, 6–7.    20 Johns. R. 5.

2. Where a deed is executed in secret and the acknowledgement taken under a special injunction of secrecy, it is evidence of fraud.    1 Burr. 482.    *Twine's case*, 3 Coke, 80.

3. The grantees did not enter upon and take possession of the granted premises, at the time of the conveyance, but the

grantor remained in the possession and occupancy of the premises up to the time of his death, treating it in every point of view as his own property. *Twine's case,* 3 Coke, 80. *Hildreth* v. *Sands,* 2 Johns. Ch. R. 35.

4. The deed is not only absolute and executed in the absence of the grantees, but without an estimate of the value of the property conveyed, or even ascertainment of the consideration. These and like circumstances are sufficient to invalidate the instrument. 8 Mod. Rep. 59. 6 Serg. & Rawle, 56. 3 Stark. 1708.

IV. Whatever may have been the date of this deed, or time when executed and acknowledged, is immaterial, and for the purposes of this case, perhaps, unimportant to inquire what was the state of Guernsey's mind at the time.

1. A deed with all the necessary requisites in the hands of the grantor, or any person holding it for him, is altogether harmless and inoperative. It takes effect only from its delivery. *Jackson* v. *Phipps,* 12 John. R. 418, 421. *Fish* v. *Gordon and wife,* 10 Vt. R. 288. *Denton* v. *Perry et al.* 5 Vt. R. 382, 389. 1 Eq. Dig. 397, pl.7, 11–12. 10 Mass. 456. The inquiry then should be as to Guernsey's competency to contract or to assent to a contract at the time the deed was actually delivered, for if then incompetent all would be void.

2. As to the time when the deed was in fact delivered, there is little evidence except what arises from the defendant's answers, the recording of the deed, and the circumstances of the case.

3. From the proof it would seem that Chauncey Guernsey was either a wrong doer, or, at best, a mere depositary of the deed ; and in either case incompetent to deliver it. 1 Paige's Ch. R. 384.

4. The orators deny that Chauncey Guernsey was ever the agent of Hoit Guernsey for any purpose. But, if he was an agent, they insist upon the application of the principle that if a principal becomes insane, from any cause, the powers of his agent appointed by him necessarily ceases, because the principal has no longer the capacity to control his acts. And in that case the statute provides that a guardian may be appointed by the probate court. Comp. Laws 365, sec. 102.

5. The deed not being recorded at Hoit Guernsey's death, will not pass the property as against these creditors ;

nor against any legal claimants, save the grantor and his heirs.

When a man dies, the law seizes upon his whole property, and converts it into a fund for the payment of debts first, and afterwards for his heirs. It vacates all attachments on mesne process, on the ground that the title has not been perfected in the one attaching. The administrator is the officer of the law, representing the creditors of the deceased. Allowing the administrator to represent the deceased, do not all the rights accrue to these creditors that they could have had if Hoit Guernsey had lived ?

V. The personal property, taken possession of by Slason & Langdon after Guernsey's death, and refused to be inventoried by the administrators of his estate, for the benefit of the creditors, generally, is of larger amount.

In respect to that, there is no proof either of a sale by the deceased to Slason & Langdon, or of possession by them until *taken* after Guernsey's death, either in the answers or elsewhere. The only pretence of any evidence to show an assignment or sale, is to be found in the defendants' answers, nor do they there pretend that they had any personal knowledge of such sale or assignment.

VI. Such parts of the defendants' answers as state the promises of the deceased, from time to time, to indemnify them, and to prefer them to other creditors, are wholly out of theca se.

1. Because the answers in that respect are not responsive to the bill, nor to any statement or interrogatory in it. There is no call for an answer on those subjects. The answers are traversed, and amount to nothing more than a plea. *McDaniels* v. *Barnum*, 5 Vt. R. 279, 293. " Matters of avoidance set up in an answer require proof of their correctness." 3 Equity Dig. p. 3, sec. 17. *Ballinger* v. *Worley*, 1 Bibb, 195. Also 3 Equity Dig. p. 4, sec. 29. *Briggs* v. *Pennyman*, 8 Cowen, 387.

2. If true, such facts have no tendency to prove an actual sale, assignment, or delivery of the goods, as no act of the deceased is proved to have accompanied or followed, to carry out such supposed promises.

3. Such parts of the answers which deny facts alleged in the bill upon the ground of " advice, information and be-

RUTLAND,
February,
1841.

Morse et al.
v.
Slason et al.

Rutland,
February,
1841.

Morse *et al.*
*v.*
Slason *et al.*

lief" only, cannot be taken as evidence in their favor, inasmuch as the facts alleged, if true, must have been within the knowledge of the defendants, and ought to have been answered *positively,* and not *negatively,* as in this case. The answers, at least, are equivocal. 3 Equity Dig. p. 9, sec. 24. *Pierson* v. *Meaux,* 3 A. K. Marsh. 6.

Besides, the advice may have come from an improper source, built upon falsity ; may have been interchanged between the defendants, and still no tangible falsity to be found in the answer, and upon this more than doubful source, the *belief* must rest.

If not entirely fallacious, why not prove the fact by those advisers and informers ?

Shall the ownership of this large amount of property be changed in the twinkling of an eye by the mere belief of a party, who is to pocket the avails, without a single act done by either of the supposed contracting parties, or a single fact proved to sustain such an extraordinary belief ? And that, too, upon an equivocal answer to an inquiry as to a fact about which Slason or Langdon, or both, must be presumed to have known positively, if such fact had existed.

If a defendant submits to answer at all, he must answer fully and particularly. 3 Equity Dig. p. 9, sec. 25. *Hagthorp* v. *Hook,* 1 Gill. & Johns, 272.

What is stated in the bill and not answered to is not in issue. 3 Equity Digest, 4, sec. 22. *Wilson* v. *Carter,* 4 Hayw. 92.

What is asserted in the answers, and not proved, is not to be regarded. Id. sec. 23.

If the answer evade the fact, no issue is upon it. 3 Equity Dig. 4, sec. 24. *Philips* v. *Overton,* Id. 292.

*Linsley* and *Ormsbee,* for defendants.

The defendants in this case contend that there is no equity in the orator's bill. For, after the full and clear discovery by the defendants of all the matters inquired after, by the orators, it is inequitable, on the part of the orators, to press for the surrender of any part of a fund which is entirely inadequate to indemnify the defendants for their claim as sureties.

The questions in this case are mainly questions of fact.

The bill is emphatically a bill for a discovery, and the answers are responsive to the bill. The answers, if believed, make out a perfect defence. They are not impeached in any way ; but, on the contrary, on the whole, are corroborated both by the testimony and by the circumstances connected with the case.

RUTLAND, *February*, 1841.

Morse et al. ·v. Slason et al.

It appears from the evidence that, until very near the time of his death, Guernsey preserved his mind and senses almost entirely unimpaired.

To execute and perfect a pre-existing contract, to indemnify sureties, would require only the smallest degree of understanding. That the deceased possessed sufficient understanding for this purpose, cannot be doubted. It is beyond dispute that the things done were done in entire accordance with the previous contract.

A court of chancery would require the most positive and plenary evidence of incapacity or fraud, and perhaps both, before they would set aside a contract completed under such circumstances and for such purposes.

It may well be doubted whether a court of chancery would decree assets to be surrendered up, where sureties were in quiet possession of them, when they had taken possession of them for the purpose of securing themselves, and under a contract that they should be secured when they required it.

There was no necessity for the defendants to take possession of the assets made over to them, for their security, at any particular time. It is sufficient that they took possession of them before any other person having a legal title to do so.

If this position was abandoned, it appears that they took possession during the lifetime of H. Guernsey, and with his consent and approbation.

Between merely equitable claimants, each having equal equity, he who has the precedency, in time, has the advantage in right. *Fitzsimmons et al* v. *Gustin,* 7 Cranch, 18.

When the only ground of equitable jurisdiction is the discovery of facts solely within the knowledge of the defendant, and the defendant discloses no such facts, and complainant introduces evidence unaided by defendant's confession, complainant should be dismissed from chancery to law. *Russell* v. *Clark's Exr's*, 7 Cranch, 69.

Equity, as against other creditors, will decree a specific

performance of a prior agreement for security on a particular fund. *A fortiori*, it will not take such fund from the possession of the creditors, for whom it was designed.

When A., on borrowing money from B., wrote him a letter saying, " I will give you a bill of sale of my schooner to reimburse you," but died without giving a bill of sale, it was held that B., in equity, had a lien upon the vessel in preference to other creditors. *Read* v. *Gaillard*, 2 Dessau. 552.

A court of chancery will compel a principal to give a surety security even without an agreement. Surely, then, chancery would do so, with an agreement, and most certainly they would not take security from the hands of a surety without the clearest proof of fraud in obtaining it.

As it regards a discovery of assets belonging to the estate of a deceased person, the court of probate have exclusive jurisdiction. That court, in such a matter, alone can act *in rem.* 11 Vt. R. 18.

The opinion of the court was delivered by

REDFIELD, J.—This is an appeal from the court of chancery. The object of the bill is to vacate a sale, claimed, by Slason and Langdon, to have been made to them, by Hoit Guernsey, of certain property, real and personal, during his last illness. Slason is one of the administrators, and has not inventoried nor taken any account of this property, as belonging to the estate. The bill seeks to make him accountable for it, or for its value.

A preliminary question has been made in the case, in regard to the right of the creditors to come into a court of chancery for redress, while the estate is in process of settlement in the probate court. But the court have not considered that a sufficient objection to the bill being sustained. The fact that one of the claimants to the estate in question is, also, one of the administrators, is, of itself, a sufficient reason why no adequate redress could be afforded in the probate court, until he was removed from office, which that court could not do, without, in reality, deciding the very question in dispute, and that prior to its formally coming before them. Courts of chancery, in cases of this kind, where the creditors had an interest adverse to that claimed by the

administrator, have often entertained jurisdiction of the controversy, until the rights of those concerned were determined; and then the case must, of course, be remitted to the probate court for final adjustment and distribution. The proceeding in the court of chancery is considered as merely ancillary to that in the probate court, in a matter wherein their forms and mode of procedure do not enable them to afford adequate redress.

It has been urged, too, and with no little plausibility, that one involved in debt to a large amount, and largely insolvent, ought not to be allowed to prefer creditors by a deed, or other instrument, which is under his control during his whole life, and only takes effect at the very moment when a lien upon his property attaches in favor of *all his creditors*. But the numerous cases decided upon this subject, many of which have been referred to in the argument, all show, that where a deed is delivered to one in trust for the grantee, to take effect at the grantor's death, unless he shall otherwise direct in his lifetime, and he dies without giving any further direction, the deed does, at the death of the grantor, take effect, as his deed, from the *first delivery*. From this view of the cases, there does not seem any very valid objection to this mode of preferring creditors, which will justify the court in distinguishing it from the ordinary cases of preferring creditors. It is always an invidious, and, sometimes, an unjust distinction, but one which the law of this state does not prohibit or control. And we think this case is not, in principle, distinguishable from the ordinary cases. There is nothing here indicating any want of good faith, or any attempt at disguise or dissimulation.

In regard to the deed of the real estate, it appears fair upon its face, and bears date and is shown to have been executed at a time, when the grantor certainly was conscious of his actions, to some extent, and *so far* capable of contracting. The burden of proof, then, lies upon the orators to impeach the conveyance. The proof, we think, falls short of establishing any such degree of imbecility or insanity of mind, at the time of executing and delivering the deed, as would justify this court in determining, with any confidence, that the grantor was not fully aware of the nature and extent of his contract. We incline to think he was. Surely the

evidence does not show that he was not.  The deed of the real estate, we think, therefore, must stand good.

In regard to the personal estate, it is very clear that the intestate never did, understandingly, make any sale or delivery of it.  Whatever was done beyond mere naming of the subject, was done by Chauncey Guernsey, the father of the intestate, when his son was past all consciousness, and, literally, in the last agony of existence.  It is in vain to expect the court could, or would attempt to sustain a sale and delivery of personal estate, made under these circumstances. Slason must be required to charge himself with the value of this property, in his administration account, and the case must be referred to a master to ascertain that value.

A mandate was sent to the court of chancery to proceed with the case accordingly, this court having first reversed the decree of that court, dismissing the bill.

