Sargent *v.* Salmond.

HERBERT R. SARGENT *versus* WILLIAM SALMOND *& al.*

The liability of the principal in a promissory note, to reimburse his surety for any payment made by the latter, in consequence of his so becoming surety, commences at the time the note is delivered to the payee ; and whenever payment may be made by the surety, he is to be considered as a creditor of his principal, from the time the note was made and delivered.

A court of equity will assist a judgment creditor to discover and reach the property of his debtor, fraudulently transferred, although not liable to be attached upon a writ, or seised on execution, when the creditor has exhausted his remedy at law, without having obtained payment of his debt.

A judgment is evidence of the amount of indebtedness between the parties to it; but is not binding as to third persons, not parties or privies thereto.

If one has received a conveyance of an estate under such circumstances as will render the conveyance fraudulent as to creditors, still the grantee is not bound to restore this property to a creditor, to an amount beyond the sum justly due to him.   And if a creditor takes judgment for double the amount justly due to him, a court of equity will not interfere to assist him in obtaining satisfaction of such judgment.

Nor will the Court interfere where land has been fraudulently conveyed, if the grantee has received no benefit therefrom, and the title is still a matter of controversy, and of litigation between such grantee and a claimant of the property.

BILL IN EQUITY against William Salmond and Mary P. Salmond.

In the opinion of the Court will be found a recital of all the material facts.

*W. G. Crosby,* for the plaintiff, said that the conveyance to

the daughter was fraudulent against creditors, both as it respected the real estate and the note transferred to Coombs. The land became substituted for the notes, and that land was conveyed to Mary P. Salmond without consideration, and is fraudulent as to creditors. We could not make a levy upon this land, because the title was never in the debtor, William Salmond; and it cannot be reached but in equity, and can be there. *Gordon* v. *Lowell,* 21 Maine R. 251; 20 Johns. R. 554.

Mary P. Salmond has brought a writ of entry to obtain possession of the land. We ask for a decree, that she should assign that judgment, and convey the land; and should prefer that to a decree for the payment of money.

*Allyn,* for the defendants, denied that the plaintiff was entitled to recover either on the ground of justice, equity, or law. He took judgment for just double the amount, which was due to him. Judgments may be inquired into by any one not a party to them. Jeremy, 492. The defendants have never had possession of this property, and have never derived any advantage from it, and it is wholly uncertain whether either of them ever will. The bill is at least premature.

The law allows the father to transfer to his daughter, or to any one else, property which could not be reached by any process of law. Creditors could not be injured by it, for they could not touch it. The conveyance was therefore good; and so are the authorities. Jeremy, 413, 414; Story's Equity, § 367.

There are three kinds of conveyances, as it respects consideration. 2 Black. 297. 1. For valuable consideration. 2. For good consideration. 3. Mere voluntary conveyances without any consideration. This is for a good consideration, being from a father to his child.

But the plaintiff is not entitled to be considered as a prior creditor, as the conveyance was in 1837, and the plaintiff's cause of action first accrued in 1840. He was not a creditor until he paid the money.

The opinion of the Court, SHEPLEY and TENNEY Justices, WHITMAN C. J. not being present, was drawn up by

TENNEY J. — In June, 1837, the defendant, William Salmond, being upon notes as surety for P. & E. T. Morrill & Co., conveyed all his real estate, which was of considerable value, to his three daughters without any valuable consideration. He also indorsed two notes, which he held for money lent, against that firm; and he caused a suit to be brought thereon in the name of Robert Coombs, and an attachment to be made upon the real estate of the firm, or some of its members. Coombs had no knowledge of the indorsement of the notes or of the suit, till it had been pending in Court for a considerable time; when he had information thereof, he objected to its further prosecution, but was prevailed upon by William Salmond to withdraw the objection; the suit passed to final judgment, which was entered up for $1372,45, debt, and for $18,80, costs. This judgment Coombs assigned to the defendant, Mary P. Salmond. A levy was soon after made upon the real estate, attached upon the original writ, by virtue of the execution issued on that judgment, and satisfaction obtained for the sum of $750. Coombs immediately after the levy, agreeably to an expectation of William Salmond, entertained at the time he indorsed the notes, and caused the suit to be brought thereon, and by an arrangement with both the defendants, released by quitclaim deed all his interest in the land set off, to the defendant, Mary P. Salmond. Coombs employed no attorney to bring or prosecute the suit, and never paid or agreed to pay any costs on account of the same; he did not know when judgment was obtained; chose no appraiser, when the levy was made, nor had he knowledge of the levy till afterwards; and has been at no expense in reference to it. He gave nothing for the notes, and has received no consideration for the assignment of the judgment, or the release of his interest in the property set off upon the execution.

The name of the complainant was on two notes to the Bel-

fast Bank as a surety, one dated in March and the other in April, 1837, and on which was the name of William Salmond. It is not now disputed, that these notes were made and discounted for the benefit of P. & E. T. Morrill & Co. Whether the complainant was a co-surety for that firm with William Salmond, or held the relation of surety to William Salmond, was a question in issue between the parties to this suit, which will be considered hereafter. These notes were received by the bank and the money paid therefor, prior to the conveyance of the real estate by William Salmond to his daughters, and the indorsement of the notes, on which the judgment in the name of Coombs was obtained. The complainant afterwards paid upon the two notes to the Belfast Bank, at different times, the sum of $882,06. William Salmond paid nothing on those notes. The complainant commenced a suit against William Salmond for the money paid and interest thereon, in which suit the defendant therein was defaulted, and judgment was rendered for the whole amount claimed and interest, execution was issued, and an officer returned thereon, that not being able to find any property on which to levy the same within his precinct, it was in no part satisfied, and the same judgment remains in full force and unpaid. The complainant asks the Court to decree, that the said Mary P. Salmond release her interest in the estate upon which the execution was extended, she having commenced a suit against the person in possession, but not having obtained judgment thereon ; or to assign the judgment and execution which she may obtain in that suit to the complainant, or such other relief as may seem proper to the Court.

If the complainant and William Salmond were co-sureties on the notes to the bank, the liability of one to the other, to contribute his proportion, in the event that the principals should fail to discharge them, and payment should be made by one, attached at the time the notes were made and passed to the bank. If William Salmond was the principal and the complainant was the surety, the liability of the former to reimburse the latter for any payment made by him would

commence at the same time. *Howe* v. *Ward*, 4 Greenl. 195; *Thompson* v. *Thompson*, 19 Maine R. 244. The complainant having entered into the relation of surety for Salmond or as a co-surety with him for others, and having paid to the bank the larger portion of the two notes, was entitled to recover something of Salmond; the amount would depend upon the character of that relation. The complainant must be viewed as a creditor of Salmond at the time the money was paid by the bank upon those notes, and is entitled to complain, if any conveyance or transfer was made by his debtor without consideration, of any property afterwards. Such transfer would be a fraud upon him either in fact or in law. The attempt of William Salmond to convey the real estate to his daughters, and the transfer of his notes and the transactions which followed were a fraud upon the complainant and other creditors, and such as the law will not uphold to their prejudice.

It is said by the defendant's counsel, that the notes, which were transferred by William Salmond to R. Coombs, were not property, which could be made available to the complainant on his execution, and therefore the transfer was not injurious to him. And in support of this he relies upon Story's Equity Jurisprudence, sect. 367, and the cases cited in the note. It is laid down by this learned commentator, as the settled doctrine of English chancery, " that in order to make a voluntary conveyance void as to creditors, either existing or subsequent, it is indispensable, that it should transfer the property, which would be liable to be taken on execution;" that the statute of the 13th of Elizabeth was not intended to enlarge the remedies of creditors, or to subject property to execution, which was not previously in any way subject to creditors. Lord Thurlow in referring to the case of *Horn* v. *Horn*, reported in Amb. R. 79, where a different doctrine was intimated, said, " The opinion in *Horn* v. *Horn*, is so anomalous and unfounded, that forty such opinions would not satisfy me. It would be preposterous and absurd to set aside an agreement, which if set aside, leaves the stock in the name of the person, where

you could not touch it." *Gragan* v. *Cook*, 2 B. and Beatt. 233.

But Chancellor Kent says, " notwithstanding the plausibility of the reasoning in support of this doctrine, he should be very sorry to find it the settled doctrine of the Court ; it seems too encouraging to fraudulent alienations." He reviews the authorities, and considers the contrary opinion as firmly established and adhered to in the courts of chancery, till the time of Lord Thurlow ; and after noticing the decisions of Lord Thurlow, and those subsequent thereto, remarks, " I have not discovered any thing weightier than the *dictum* of Lord Thurlow repeated in subsequent cases." And again, " the authority of the cases of *Taylor* v. *Jones*, 2 Atk. 600 ; *King* v. *Dapim*, cited in a note to *Taylor* v. *Jones*, and *Partridge* v. *Gopp*, Amb. 596, may be considered as shaken, but they cannot be viewed as overruled by these subsequent doubts." *Bayard* v. *Hoffman*, 4 Johns. Ch. R. 450. The same principle was affirmed in *M'Dermutt* v. *Strong & al. ibid.* 687, and in *Hadden* v. *Spader*, 20 Johns. R. 554. In the last case an appeal was taken from the decision of the chancellor to the court of errors, and his decree was affirmed. Judge Woodworth undertakes to show by an examination of the cases, that in the times of Lords Hardwicke and Northington, and until our own revolution, the doctrine recognized by the courts in New York was the settled doctrine of England. He says, " he cannot too much approve the justice and morality of the rule laid down by his honor, the chancellor, in *M'Dermutt* v. *Strong*, that if the creditor has taken and exhausted all the means in his power, at law, he will be entitled to the aid of a court of chancery, to discover and apply the property to satisfy his execution," and he adds, " that the decree of the chancellor is warranted by the established principles, which govern a court of equity. If property not tangible by an execution, is placed in the hands of a trustee, is there any hardship in requiring him to pay it to the creditor, instead of the *cestui que trust*."

The principle, as settled by Lord Hardwicke and other courts of chancery in England, and which has been well estab-

lished in New York, was applied by this Court in *Gordon* v. *Lowell*, 21 Maine R. 251. The ground now taken, does not seem to have been relied upon in that case; but upon a review of the cases bearing upon this point, we are confirmed in the correctness of the opinion there given.

The reasons given by Lord Thurlow for his disapproval of the doctrine in *Horn* v. *Horn*, which he expressed in such strong language, and the views taken by courts of chancery subsequently in England, it is apprehended are inapplicable under the laws of this State. The aid of chancery power is denied by them because by the statute of the 13th of Elizabeth, choses in action, and the like property, are utterly intangible by an execution; that if it is brought back to the condition in which it was before its fraudulent transfer, the creditor by virtue of his execution, is entirely powerless.

The Legislature, perceiving the difficulties in the way of creditors' rights, have provided, that a debtor in an execution, upon a judgment of an amount sufficient to expose him to arrest, if the creditor wishes to pursue the steps pointed out, cannot escape perpetual imprisonment, unless he should make disclosure concerning "his estate and the effects and the disposal thereof," — "and if it shall appear, that he possesses or has under his control, any bank bills, notes, accounts, bonds, or other contracts, or any property not exempted expressly by statute from attachment, but which cannot be come at to be attached," — so much of the same as may be necessary to discharge the debt and costs can be appropriated for that purpose. Rev. Stat. c. 148, § 25 and 29. And it is made penal for a debtor wilfully to disclose falsely, or to withhold or suppress the truth, in addition to liability to be punished criminally; and the person, "who shall knowingly aid any debtor or prisoner in any fraudulent concealment or transfer of his property to secure the same from creditors," is also exposed to the like penalties. Same c. § 47 and 49.

When the Legislature have shown a determination by general statutes, to protect the rights of creditors, and to guard them

from the losses, to which they would otherwise be liable by the frauds of debtors, in withdrawing their means of payment from exposure to direct attachment, and in the enjoyment of those means, without incurring the risk of their being taken away, it cannot be supposed, that they intended to limit their remedy to that which might prove wholly abortive, and to secure to those guilty of the fraud the very property which was its subject, or which was its avails.

If a debtor could be permitted to give to a relative or friend, in whom he had confidence, all the estate to which he had title, and place it beyond his own control, cause it to be changed into another species, where it should be still in existence, and where he should be allowed to participate in its fruits, the creditor might be able, if the fraudulent debtor could be compelled to make an honest disclosure, to inflict the deserved punishment upon the agents in the iniquity ; but this alone would be a poor remuneration for his loss, when he could witness, that the property really his, contributed to sustain those, perhaps in affluence, who had defrauded him. As a remedy it is indirect, and often would be inadequate.

It cannot be believed, that it was the design of the statute to afford in no case any other mode of redress than such as is contained in its provisions. In the case of *Hadden* v. *Spader,* before cited, in reference to the insolvent act of New York, the Court say, " if an effectual remedy could be had, under that act, it does not affect the present question ; it proves that there is a concurrent remedy ; but that remedy is not effectual." Before a creditor could apply the statute in reference to " property, which could not be come at, to be attached," the debtor willing to commit a fraud would have an opportunity by the exercise of a dishonest ingenuity, to place it in a condition to be available to himself and secure against his creditor, if such aid as is now sought should be denied upon this ground.

The Legislature have manifestly not intended so to restrict creditors in their remedies. The provisions referred to are important and founded in wisdom, but they may be evaded and fail to afford to the creditor, the means to reach property trans-

ferred by the debtor, which as between them cannot legally vest in another. This Court have the power to hear and determine as a court of equity, all cases thereafter enumerated, where the parties have not a plain and adequate remedy at law. All cases of fraud are within the power conferred, and at law the remedy is not always one which is adequate.

But the counsel for the defendants contend, that the relief as sought in the bill cannot be granted, because the complainant wrongfully took judgment for a larger sum against William Salmond, than he was authorized by law to do; that he was a co-surety with Salmond for the firm of P. & E. T. Morrill & Co., and was entitled to a judgment for one moiety only of the amount paid, and interest thereon.

The bill charges that the complainant was a surety for the defendant, William Salmond, to the bank. To this allegation in the bill, the answer is, that the complainant and William Salmond were co-sureties of P. & E. T. Morrill & Co., to the Bank, and that firm was the principal; that Salmond received no part of the consideration paid by the bank upon either of the notes. There is no evidence in the case, that Salmond was the principal upon either of the notes, excepting that his name was first in order upon the paper. The relation which the respective makers of the notes held to each other is not shown by the notes themselves; and it is competent for the parties to prove by other evidence, who of the signers were principals and who the sureties. In addition to the answer, which is full and express upon this point, the cashier of the bank testifies, that by the books of the bank, after the notes were discounted, the money was paid to the firm of P. & E. T. Morrill & Co., or to one of its members. The judgment is evidence against William Salmond, the debtor therein, of the amount of indebtedness; but it is not binding against the other defendant, who was not a party to the judgment or the suit in which it was rendered. She is entitled to impeach it in this suit, commenced for the purpose of affecting her personally, or the interest in the property, which she claims as belonging to her. If she has received property of the other

defendant fraudulently as against the creditors of the latter, she cannot be bound to restore it beyond an amount sufficient to cover the just and legal claims of creditors. When the bill, answers and proof are considered, it satisfactorily appears, that the complainant took judgment against William Salmond for a sum larger than that to which he had a just and legal claim, and it does not conclude the defendant, Mary P. Salmond.

If this obstacle to a decree in the complainant's favor were removed, another difficulty is presented, which must induce the Court to withhold an order, that Mary P. Salmond make and execute a deed of release of her right in the land, on which the execution in the name of Coombs was extended; or that she account to the complainant for the value of the property, which is supposed to have been received by her, as the avails of the notes fraudulently transferred. The complainant has done nothing, which has in any manner created any right or interest in the land. Mary P. Salmond has acquired no other possession, than that derived from the deed of release of Coombs. The possession is in one who claims to hold adversely to her, against whom she brought a suit by a writ of entry, which suit is still pending between the parties thereto. A deed purporting to convey the land, executed and delivered by her, would pass no title, while the tenant withholds the possession, which neither she nor her grantee may ever obtain. The levy of the execution upon the land, held adversely, was insufficient to give her a right therein, which could be the subject of a decree by a court of equity. The title to the same must first be settled at law. If it were otherwise, no mode exists, and no facts appear, by which the value of the land thus situated can be ascertained.

Equity will follow the proceeds of property obtained in fraud of creditors' rights, into the hands of persons holding them, for the benefit of such creditors. In the case referred to and relied upon by the complainant's counsel, of *Gordon* v. *Lowell*, 21 Maine R. 251, the party who was decreed to pay the value of the property fraudulently conveyed to him, had

sold the same property, and received the purchase money, which he retained in his own hands, at the time the bill was filed.

Mary P. Salmond was the fraudulent assignee of Coombs' judgment, and the fraudulent grantee of the land taken in part satisfaction of that judgment. But when the complainant filed his bill, nor at any time since, has she received any thing on account of the notes fraudulently transferred by her father. And on this ground a decree that she should account, would be entirely nugatory, which is a sufficient reason for its denial.

An assignment of the judgment in favor of Coombs, would be ineffectual to give the complainant any right in the land, which was taken in execution issued on that judgment. The execution has performed its office so far as it has been satisfied by the levy, and an assignment could not operate upon the land already set off. It could transfer only the balance of the judgment remaining unsatisfied.

It would not be competent for the Court to order an assignment of the judgment which Mary P. Salmond is seeking to obtain against the tenant in possession of the land set off on Coombs' execution. No such judgment exists and cannot be the subject of an order of the Court.

*Bill dismissed without costs and without prejudice.*