[No. 11483.   Department One.   April 27, 1914.]

LAURA ALLEN, *Appellant*, v. IDA M. KANE *et al.*,
*Respondents.*[1]

FRAUDULENT CONVEYANCES—"CREDITORS"—NECESSITY OF JUDGMENT. The vendee in a contract of sale of real property, who had paid $1,000 as earnest money, is a "creditor" of the vendor at the time the vendor repudiates the contract and, tendering repayment of the earnest money, sells and conveys the land to another, within the meaning of the statute of frauds, 13 Eliz. c. 5, providing that all conveyances made with intent to hinder, delay or defraud creditors shall be void; it not being necessary that the claim be reduced to judgment to make the claimant a "creditor."

SAME—WHAT CONSTITUTES—BREACH OF CONTRACT—INTENT — EVIDENCE—SUFFICIENCY. The breach of a contract to convey property by the sale of the same to another is shown to be fraudulent as to the vendee as a creditor, where at the same time the vendor hastily conveyed away all her other property thus making herself execution proof, and by a secret agreement took back a contract giving her the exclusive agency to control and sell the property for one year, and withheld from the record conveyances of property received as part consideration.

SAME—FRAUDULENT GRANTEE—BONA FIDES—EVIDENCE—SUFFICIENCY. In such a case, the fraudulent vendee is not a *bona fide* purchaser, as to payments made after notice of the fraudulent nature of the original transaction, where, after knowledge that ought to have convinced him of the fraudulent purpose of the grantor, he entered into a new contract, whereby, in lieu of property of which he was to have conveyed in part payment, he paid them $2,500 as a part of the consideration of his original purchase.

SAME—INSOLVENCY—PREFERENCES—VALIDITY. The right to secure a preference by purchasing all of the insolvent's property does not exist when the creditor has knowledge that the purpose of the insolvent debtor was to place his property out of the reach of other creditors, appropriating any part of the purchase price to his own use, and the preference might have been secured without purchasing all the property.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 7, 1913, dismissing an

[1]Reported in 140 Pac. 534.

acton to subject property to a judgment, after a trial on the merits to the court. Reversed.

*Jay C. Allen,* for appellant.

*John E. Ryan* and *Grover E. Desmond,* for respondents.

ELLIS, J.—In this action, the plaintiff sought to set aside, as in fraud of her rights, a transfer of property from the defendants Kane to the defendant Atwood, and to subject the property to the lien of a judgment against the defendants Kane in favor of the plaintiff. The property conveyed by the Kanes to Atwood is described as lot 6, block 44, Pontius' Second addition to Seattle, lot 4, block 2, McNaught's addition to Seattle, and lot 16, block 406, Seattle tide lands. This, it is claimed, was the separate property of Mrs. Kane. On November 5, 1910, the defendants Kane entered into a contract with the plaintiff to sell to her the tide land property. The plaintiff gave her check for $1,000, as earnest money. Shortly after making this contract, the defendants Kane, becoming dissatisfied, sought to be released from the contract. This was refused. The plaintiff's husband, as her attorney, examined the abstract of title to the tide lands, and, finding certain liens against them which the plaintiff had not agreed to assume, wrote the defendants Kane a letter, demanding that these liens be removed. This letter was received by the defendant Mrs. Kane on November 22, 1910. She immediately wrote a letter to the plaintiff, refusing to carry out the contract, cancelled her duplicate of the contract, and placed this letter, the cancelled duplicate, and the plaintiff's check, given in earnest, upon the desk of the plaintiff's attorney, he being absent. This was about 3 o'clock in the afternoon. Late that same afternoon, the defendants Kane conveyed the tide land property, together with the other property above described, which, as the evidence fairly shows, was all of the property owned by the defendants Kane, to the defendant Atwood. The evidence shows that the consideration for this conveyance was the cancellation of a note held

by the defendant Atwood against the defendants Kane upon which there was due about $2,490, the payment of $200 in money, and an agreement on Atwood's part to convey to the defendants Kane six lots in Pettit's University addition to Seattle, and forty acres of land in Skagit county. The property conveyed by the Kanes to Atwood was valued at the time at about $76,000. It was subject to encumbrances amounting to $56,000. Atwood took the property subject to these. The property which he was to convey to the Kanes was then valued by the parties at $17,500. At the same time, Atwood entered into a contract with the defendants Kane, giving them the exclusive right for one year to sell all of the property which they conveyed to him at a minimum price of $76,000, they to receive any amount realized over that sum as their commission for such sale. Meanwhile, the Kanes were to retain the possession and management of the property conveyed to Atwood.

The deed from the Kanes to Atwood was recorded early on the morning of November 23, but neither the contract creating the Kanes exclusive agents to sell the property, nor the agreement of Atwood to convey the six Seattle lots and the Skagit county acreage to the defendants Kane, was ever recorded. The plaintiff placed the contract which she held for the purchase of the tide lands on record also early on the morning of November 23. On November 25, she brought suit against the Kanes and Atwood for specific performance of this contract. Subsequently, she dismissed the action as to the defendant Atwood, recast her complaint to one sounding in damages, and prosecuted the suit against the defendants Kane, recovering a judgment for damages in the sum of $2,130.28 and costs. Thereafter, execution was issued upon this judgment, and levied upon all of the property which the Kanes had conveyed to Atwood. In November, 1911, while this first suit was pending, Atwood entered into a modified agreement with the defendants Kane, cancelling his agreement to convey to them his Seattle lots and the Skagit

county acreage, in consideration of his payment of $2,500. He then paid them $250 in money and gave his non-negotiable note for $2,250, which note he has since paid, part of it subsequent to the levy of the plaintiff's execution on the land conveyed to Atwood.

In May, 1912, the present action was brought to subject that property to the lien of the judgment. A trial was had to the court without a jury. The trial court made no formal findings of fact or conclusions of law, but, in his decision on the merits, which is found in the record, he held, in substance, that the plaintiff was not a creditor of the defendants Kane at the time of the transfer to Atwood; that the evidence was not sufficient to show that Atwood had notice of any fraudulent design on the part of the defendants Kane, if they had such design, nor sufficient to show that Atwood was to hold the property in trust for the Kanes. The court held that Atwood, therefore, took the property free from any and all claims of the plaintiff. Judgment was entered, dismissing the action with costs. The plaintiff appealed.

The record presents three questions, the solution of which must determine the case: (1) Was the respondent Ida M. Kane a debtor of the appellant within the meaning of the law relating to fraudulent conveyances? (2) Was the conveyance from the respondents Kane to the respondent Atwood a fraudulent conveyance? (3) Assuming that it was, was the respondent Atwood a participant in that fraud?

I. The respondents contend, and the trial court held, that there was no debt existing from Mrs. Kane to the appellant at the time of the sale from Mrs. Kane to the respondent Atwood, so that, if Atwood held the title for himself and not in trust for the Kanes, he held it free from the judgment against Mrs. Kane rendered upon the appellant's claim. If this position be found sound, it, of course, ends the discussion. The statute of 13 Eliz. c. 5, which is the prototype of all statutes touching fraudulent conveyances, provides, in effect, that all conveyances made with the intent to hinder,

delay or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, etc., should be deemed and taken as void and of no effect. This statute is a part of the common law of this state. *Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784; *Bates v. Drake*, 28 Wash. 447, 68 Pac. 961.

According to the decided weight of authority, the term "creditor," as used in this connection, embraces others than those who are strictly and technically creditors in the narrow sense of that term. Bump, Fraudulent Conveyances (4th ed.), § 502. It includes not merely the holder of a fixed and certain present debt, but every one having the right to require the fulfillment of any legal obligation, contract, or guaranty, or a legal right to damages capable of judicial enforcement, whether growing out of contract or tort.

"The character of the claim, if it is just and lawful, is immaterial. It need not be due, for although the holder can not maintain an action until it is due, he nevertheless has an interest in the property as a fund out of which the demand ought to be paid . . . . A contingent claim is as fully protected as one that is absolute. A liability as surety is within the statute as much as a liability as principal. The statute embraces all pecuniary damages incurred by reason of the obligation of a contract, whether of an ascertained amount or only sounding in damages, and whether actually asserted or only demandable." Bump, Fraudulent Conveyances (4th ed.), § 503.

"In a multitude of cases it has been repeatedly adjudged that a party bound by a contract upon which he may become liable for the payment of money, although his liability be contingent, is a debtor within the meaning of the statute avoiding all grants made to hinder or delay creditors . . . . The date when the agreement or obligation came into existence governs in determining the complaining or attacking creditor's rights. As elsewhere shown, a person whose claim arises from a tort, such as libel or slander, is a creditor. The date the tort or injury was committed governs in determining the creditor's status, where the conveyance was made in pursuance of a fraudulent design to defeat the judgment which

might be recovered upon it." Wait, Fraudulent Conveyances (3d ed.), § 90.

"The term *creditors*, as employed by the statute, has been construed liberally, and not in a narrow, strict, or technical sense. Whoever has a right, claim, or demand, founded on contract, whether contingent or absolute, for the performance of a duty, or for the payment of damages if the contract should not be fully performed, has been regarded as a *creditor*, within the meaning of the statute, against whom a voluntary conveyance will not be supported, though no breach of the contract, furnishing a cause of action, may occur until after the execution of the conveyance. *Bibb v. Freeman*, 59 Ala. 615; *Foote v. Cobb*, 18 Ala. 585; *Gannard v. Eslava*, 20 Ala. 732." *Anderson v. Anderson*, 64 Ala. 403.

See, also, *Thomson v. Crane*, 73 Fed. 327; *Hatfield v. Merod*, 82 Ill. 113; *Fearn v. Ward*, 80 Ala. 555, 2 South. 114; *Sargent v. Salmond*, 27 Me. 539; *Loughbridge & Bogan v. Bowland*, 52 Miss. 546; *Keel v. Larkin*, 72 Ala. 493.

Some confusion seems to have arisen in counsel's mind because of the fact that, though the law of fraudulent conveyances makes the fraudulent transfer void as to all creditors thus broadly defined, still it does not give to such creditors any new process or procedure for the enforcement of their claims. Such creditors must still proceed to reduce their claims to judgment and issue execution thereon before they can proceed in equity to subject the property conveyed in fraud of their rights to the payment of their claims. Bump, Fraudulent Conveyances (4th ed.), § 535. This, however, is a very different thing from assuming, as counsel assumes, that a creditor is not a creditor until his credit has been reduced to a judgment and a specific lien attached to specific property. The transfer is, of course, valid until it is attacked in a legal way, and it can only be attacked after the creditor's claim is reduced to judgment. The creditor, though a creditor before such judgment, must proceed to appropriate the property which he seeks to subject, by a due course of law. After his claim has been reduced to judgment, he can subject to its payment property which has been con-

veyed in prejudice of his preexisting right as a creditor on
which the judgment is founded. *Lillard v. M'Gee*, 4 Bibb
(Ky.) 165. This is not only the general rule, but it is the
established law of this state, clearly recognized by our de-
cisions. Though we have held that a creditor cannot, prior
to reducing his claim to judgment, enjoin the transfer of the
debtor's property on the suspicion that a threatened transfer
may be tainted with a fraudulent intent, and cannot subject
the debtor's property to the payment of his claims until he
has reduced his claim to judgment (*O'Day v. Ambaum*, 47
Wash. 684, 92 Pac. 421, 15 L. R. A. (N. S.) 484), we have
also held that one taking a voluntary conveyance, though, at
the time of the conveyance, the claim of the creditor had not
yet been reduced to judgment, cannot, as against such claim,
be considered an innocent purchaser, and that thereafter,
when the claim of the creditor shall have been reduced to judg-
ment, the creditor may assert it against one taking a volun-
tary conveyance of the property. *Bates v. Drake, supra;
Sallaske v. Fletcher*, 73 Wash. 593, 132 Pac. 648.

Obviously, the same rule would apply to a purchaser for
value with notice. In *Bates v. Drake, supra,* the facts were,
in all respects, closely analogous to those presented by the
record here, save that the conveyance sought to be avoided
was a voluntary conveyance, whereas the conveyance here
was for value, but it is claimed the purchaser was affected
with notice that the conveyance was made for the purpose of
defrauding the creditor. In the case cited, the creditor's
claim was a mere right to damages at the time of the convey-
ance, but had been reduced to judgment and an execution
levied before it was sought to set aside the conveyance. In
this phase of the case, it is an exact parallel with the case in
hand. We there said:

"The statute of 13 Eliz. c. 5, which is a part of the com-
mon law of this state (*Wagner v. Law*, 3 Wash. 500-502, 28
Pac. 1109, 28 Am. St. Rep. 56, 15 L. R. A. 784), provided
that all conveyances made with the intent to hinder, delay, or

defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, etc., should be deemed and taken as void and of none effect. In those states where a similar statute is in force, or which recognize this statute as being a part of their common law, it is the almost uniform holding that a person having a claim against another for damages sounding in tort is a creditor of that other within the meaning of the rule, and this holding, we think, is supported by the better reason."

There can be no question that, both upon sound reason and sound authority, the appellant here was a creditor of the respondent Kane at the time of the conveyance to the respondent Atwood. The abandonment of her action for specific performance in no way affected her rights as a creditor.

II. It is seriously urged that the respondent Kane was not guilty of fraud as against the appellant in making the transfer of her property to the respondent Atwood. It is argued that the owner of property who contracts to convey to a designated vendee may, notwithstanding that fact, sell the same property to another without being guilty of fraud. This is true only in a limited sense. While a breach of contract is not technically designated as a fraud, it is, nevertheless, true that every wilful breach of a contract has in it an element of fraud. At any rate, the breach of contract assumed would create the vendee in the first supposed contract of sale a creditor of the vendor within the meaning of the law relating to fraudulent conveyances. If, thereafter, the vendor, by conveying to another not only the land contracted to the vendee, but also all of his other property, thus makes himself execution proof, he defrauds the first vendee and the conveyance clearly falls within the law relating to fraudulent conveyances. It is true that fraud is never presumed, and, where alleged, must be proved by clear and convincing evidence. It is sometimes said that fraud is easily charged and hard to disprove. This is true, but it is also true that fraud is easily committed and hard to prove. A fraudulent intent is seldom confessed or blazoned upon a banner. In most cases,

it can only be proved by circumstantial evidence, and there is no circumstance more persuasive and more often recognized by the courts as convincing than the fact that a debtor, on the eve of a suit against him, transfers all of his property to another, thus placing it beyond the reach of execution. The respondent Kane, after having repeatedly sought a release from her contract with the appellant, wrote the appellant a letter repudiating the contract in the afternoon of November 22, 1910, and, before sunset of the same day, transferred not only the property covered by the contract, but all other property of which she was possessed, to the respondent Atwood, giving him an absolute conveyance of the property, and taking back a contract giving her the exclusive agency to sell and control the property for one year. She also took, as part payment, a contract for the conveyance of other property from the respondent Atwood, but withheld that contract from the records, thus insuring that property against execution upon any judgment which might be rendered in the threatened suit of the appellant for breach of the contract which she had repudiated. While it is true that some feeble effort was made by the respondent to prove that, at the time, she and her husband owned other property not conveyed to Atwood, an examination of the evidence convinces us that, at the time, they had, and she knew that she had, no other property in which there was a living equity. We are convinced that the respondents Kane were mainly, if not wholly, moved by a fraudulent motive in their hasty transfer of all of their property to the defendant Atwood.

III. Was the respondent Atwood a participant in this fraudulent design? Upon this point, the evidence, though strongly persuasive, is not clear and convincing. Atwood testified positively that, at the time he received the conveyance, he not only did not know that the respondents Kane had contracted to convey the tide lands to the appellant, but that he then did not even know that they were acquainted with the appellant or her husband. While the circumstances

surrounding the transaction and the terms upon which the
conveyance to the respondent Atwood was made raise a
strong suspicion that it was originally understood that he
should hold the lands in secret trust for the respondents
Kane, both he and the respondents Kane deny that such was
the intention. We shall not further discuss this phase of the
evidence. Let it suffice to say that it is not altogether
sufficient to convince us that the respondent Atwood, at the
time of this conveyance, knew of his grantors' fraudulent
purpose.

His own testimony, however, makes it plain that, after he
had knowledge which ought to have convinced any reason-
able man of the fraudulent purpose of the conveyance to him,
he entered into the new agreement whereby he paid to the
Kanes $2,500 in lieu of a conveyance to them of the Seattle
lots and Skagit county acreage which he had agreed to con-
vey as a part of the consideration of his original purchase.
This modified contract was made with full knowledge of ap-
pellant's claim. Some of the payments thereunder were made
after the appellant's claim had been reduced to judgment and
an execution thereon levied upon the property here in ques-
tion. In the light of preceding developments of which he was
cognizant, it taxes credulity beyond reasonable limit to sup-
pose that he did not then know of the fraudulent purpose of
the Kanes. Any reasonable man would then have known that
one of the reasons of the respondents Kane for accepting this
small payment in lieu of a conveyance of the real estate which
he had agreed to convey at a valuation of $17,500, and which
his testimony shows was worth at least $8,500, was to avoid
taking real estate which could be subjected to their debts.
He was not justified in assuming that the money he then
paid would be applied by the Kanes upon the appellant's
judgment.

It is a rule, certainly supported by sound equitable con-
siderations and sustained by much respectable authority, that

where a sale and conveyance is made to an innocent purchaser, but with fraudulent design on the grantor's part, and the full purchase price be not paid at the time, the land, notwithstanding the original innocence of the purchaser, will be subjected to the payment of antecedent debts to the extent of any payments made upon the purchase price after notice to the purchaser of the grantor's covinous purpose.

"The facts, as found by the court, strip the defendant Fulton of all right to be held as an innocent purchaser without notice. The claim of the plaintiffs does not seek for more than half the land, or half the purchase money. Fulton has not yet paid more than half the purchase money; so, giving to him the most favorable position that has yet been allowed by any of the courts of our sister states, and he cannot be considered an innocent purchaser without notice in this case. 'It is well settled, moreover, that to entitle a purchaser to protection the consideration of the purchase must not only be valuable but must have been wholly or partially paid or executed. *Vattier v. Hude*, 7 Pet. 252; *Doswell v. Buchanan's Exec'r*, 3 Leigh. 365; *Dellard v. Crocker*, 1 Speer Eq. 20; *Bash v. Bash*, 3 Stobhart's Eq. 131; *Kyle v. Tait's Adm'r*, 6 Grattan, 44; *Cole v. Scott*, 2 Wash. 141' (2 White's Lead. Cas. In Equity.) It is held both in this country and in England that actual payment is in general necessary to the character of a purchaser for valuable consideration; and that giving security or executing an obligation for payment will not be sufficient." *Paul v. Fulton*, 25 Mo. 156, 163.

See, also, *Arnholt v. Hartwig*, 73 Mo. 485; *Matson v. Melchor*, 42 Mich. 477, 4 N. W. 200; *Massie v. Enyart*, 32 Ark. 251; *Parkinson v. Hanna*, 7 Blackf. (Ind.) 400; *Florence Sewing Machine Co. v. Zeigler*, 58 Ala. 221; Bump, Fraudulent Conveyances (4th ed.), p. 212, § 184.

There may be authorities sustaining a contrary rule, but none have been cited. In any event, the rule which we have announced is the only equitable rule. It does not deprive an innocent purchaser of the benefit of his bargain, nor does it permit him consciously to aid the vendor in his fraudulent purpose. It is the only rule which would prevent the pur-

chaser from compounding his agreement to pay in land by a payment of a less sum in money, thus speculating upon the vendor's fraud.

For obvious reasons, an exception to the rule which we have announced exists where payment has been made in notes of the purchaser, negotiable in their character and actually negotiated, so as to render him liable to pay them at all events. *Paul v. Fulton*, 25 Mo. 156. The facts here do not invoke that exception. Atwood's note was neither negotiable nor negotiated.

The respondent Atwood contends that he had the right to take a conveyance of all of this property because he, as a creditor to the extent of $2,490, due upon the note which he held against the respondents Kane, had the right to secure a preference, and the respondents Kane had the right to give him the preference. It is true that in this state an insolvent debtor may prefer one or more of his creditors, even if it exhausts the whole of his property to do so. *McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53; *West Coast Grocery Co. v. Stinson*, 13 Wash. 255, 43 Pac. 35; *Vietor v. Glover*, 17 Wash. 37, 48 Pac. 788, 40 L. R. A. 297; *Troy v. Morse*, 22 Wash. 280, 60 Pac. 648; *National Surety Co. v. Udd*, 65 Wash. 471, 118 Pac. 347; *Holt Mfg. Co. v. Bennington*, 73 Wash. 467, 132 Pac. 30. But we have never held that this can be done where it appears that the purpose of the insolvent debtor was fraudulent and the preferred creditor had knowledge of that purpose. As we said in *National Surety Co. v. Udd, supra:*

"But it must be done in good faith. The debt paid must be real, the payment actual, the consideration adequate. It must not be designed to prevent other creditors ever being paid. The preferred debt must not be used as a colorable consideration to protect the debtor's property from other claims or to delay or hinder their enforcement."

Though the mere fact of notice of the debtor's insolvency and of his intention to prefer, and that it may actually de-

feat the collection of other debts or defeat an execution, will not injuriously affect the preferred creditor, yet, if coupled with notice of these intentions, the purchaser, at any time before the payment of the purchase price or any any part of it, receives notice that the vendor's purpose was not merely to give him a preference, but in addition thereto, to place his property out of the reach of other creditors, appropriating any part of the purchase price to his own use, such notice will injuriously affect the preferred creditor and render the conveyance to him void *pro tanto*.

"A transfer, however, may be fraudulent, although it is made in consideration of an honest debt, for an honest claim may be used as a cover to a covinous transaction. The distinction is between a transfer made solely by way of preference of one creditor over others, and a similar transfer made with a design to secure some benefit or advantage therefrom to the debtor, or to delay creditors in the collection of their debts. While the law permits an insolvent debtor to make choice of the persons he will pay, it denies him the right in doing it to contrive that other creditors shall never be paid, or to use the debt of the preferred creditor as a colorable consideration to screen and protect his property from their claims or to delay, hinder, and embarrass them in the enforcement of their demands." Bump, Fraudulent Conveyances (4th ed.), § 172.

"The law looks with great jealousy upon the manner of giving preferences, and denounces all departures from good faith, and requires that the parties shall not secure any covert advantage to the debtor in prejudice of his creditors." Bump, Fraudulent Conveyances (4th ed.), § 174.

Though a creditor, in order to secure a preference, may pay a not unreasonable excess above the debt on the purchase price (*National Surety Co. v. Udd, supra*), he will not be protected in so doing, after knowledge of the grantor's fraudulent design, nor, in any event, unless he can show that the preference could not be secured without the additional payment. In the case before us, even granting that the respondent Atwood merely sought a preference, the evidence

charges him with notice of the fraudulent design of the respondents Kane before he made any additional payment, save the $200, and there is no evidence whatever that he could not have secured the preference without purchasing all of their property. He thus wholly fails to bring himself within any equitable principle which would protect him in paying anything over and above his credit and the $200, in order to secure a preference.

Upon the whole record, we find that the respondents Kane were debtors of the appellant, within the meaning of the law relating to fraudulent conveyances, from the time of their breach of the contract with the plaintiff; that the respondents Kane conveyed all of their property to the respondent Atwood with intent to defeat this claim; that the respondent Atwood had notice of this fraudulent design before paying the full purchase price, and that he therefore holds this property subject to an equitable lien in favor of the appellant for the amount of her judgment, which lien is, in turn, subject to Atwood's first payment of $2,700 on his purchase.

The judgment is reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion.

CROW, C. J., CHADWICK, MAIN, and GOSE, JJ., concur.