HERNTON *v.* SHORT.

Opinion delivered December 13, 1915.

1. FRAUDULENT CONVEYANCES—MEMBERS OF HOUSEHOLD.—Conveyances to members of the household and near relatives of an embarrassed debtor, are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and

when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.

2. FRAUDULENT CONVEYANCES—ASSIGNEE OF CREDITOR.—In the above case, the assignee of a creditor may bring an action to set aside a fraudulent conveyance.

3. FRAUDULENT CONVEYANCES—PURCHASER OF CLAIM—RIGHT TO SUE.— A purchaser at a judicial sale has the same right to attack a prior conveyance on the ground of it being made to defraud creditors, as such creditor would possess, unless such purchaser had actual or constructive notice of the conveyance at the time of his purchase.

4. FRAUDULENT CONVEYANCES—PURCHASER AT JUDICIAL SALE—RIGHT TO SUE.—The purchaser at a judicial sale has the right to attack a prior conveyances made by the judgment debtor as being fraudulent against creditors, although he paid only a nominal consideration for the claim.

Appeal from Lafayette Chancery Court; *James M. Barker,* Chancellor; affirmed.

*J. W. Warren,* for appellant.

The conveyances were not made with intent to defraud creditors. They were not without consideration. No fraud was shown. There is no equity in the bill. No credit was extended on the strength of Hernton's interest in the lands and all parties knew of the wife's possession and claim. Appellee is not a creditor within the rule. He was a purchaser at a judicial sale and had notice of the conveyances. 20 Cyc. 433, 435, 460, 528, 530; 34 Ark. 291.

*Searcy & Parks,* for appellees.

1. The conveyances were voluntary and fraudulent as to creditors. 108 Ark. 164; 76 *Id.* 252; 62 S. W. 23; 61 S. E. 378.

2. There was no adverse possession. 74 Ark. 320; 58 S. W. 467.

3. Smith in the purchase acted for himself and was a stranger to the bank. 107 Ark. 232.

4. Appellee was a creditor. Notice did not affect his rights. 24 Cent. Ed. Am. Digest, Fraudulent Conveyances, § § 648, 651; 79 Wash. 248; 34 Ark. 291.

SMITH, J.   There appears in the record a stipulation
of the parties from which the following facts are copied:

"It is agreed by the parties, plaintiff and defend-
ant, * * * That on May 2, 1908, Pete Hernton became in-
debted to one J. O. Smith in the sum of $940 for the pur-
chase money of certain land, and on said day executed
four notes evidencing said indebtedness and bearing 10
per cent. interest per annum from date until paid, and in
a few days thereafter, in due course of trade, for a valu-
able consideration, and before maturity, said J. O. Smith
sold and transferred said notes to the Merchants & Farm-
ers Bank of Lewisville, Arkansas; that on the 21st day
of January, 1909, said bank duly executed and delivered
to R. L. Searcy and C. W. Smith, an assignment of all
its property, including the said Hernton notes as above
set forth, in trust for the benefit of creditors, and that
said assignees duly qualified and acted as such.

"That Pete Hernton did not pay anything on said
indebtedness, and on the 8th day of September, 1910, said
Searcy and Smith, as assignees as aforesaid, brought suit
against Pete Hernton on said notes, in the Lafayette
Chancery Court, and at the October term thereof judg-
ment was entered in their favor in the sum of $1,169.60,
with interest, and a vendor's lien upon the forty acres of
land for which said notes were given foreclosed, and that
said land was by said assignees sold and said judgment
credited with $120, being the net amount realized from
said sale, and that Hernton has not since paid anything
on said judgment.

"That on the 31st day of ........................., 1912, said as-
signees, acting under orders of the Lafayette Chancery
Court, sold said judgment to plaintiff, C. T. Short, which
sale was afterward duly confirmed by said court, and that
C. T. Short is now the owner thereof.

"That at the time of making said indebtedness Pete
Hernton held the legal title to the lands set out in the
complaint in the above styled cause. That on the 24th
day of March, 1910, and the 6th day of August, 1910, said
Pete Hernton, by his warranty deeds, three in number,

for an expressed consideration of one dollar and for love and affection conveyed said lands to Maymie Hernton and Josie Hernton, wife and daughter, which was all the lands to which said Hernton held the legal title in Lafayette county, Arkansas.''

These deeds conveyed an undivided half interest in two forty-acre tracts of land, and all of an additional forty-acre tract, together with certain lots in the town of Lewisville.

Appellee was the plaintiff in the suit below, and alleged in his complaint that said conveyances were made in anticipation of the judgment against Hernton, and that by the conveyances to his wife and daughter he divested himself of all property whatsoever, and that the transfers were voluntary and were made for the sole purpose of placing the property of Hernton beyond the reach of his creditors. There was a prayer for the cancellation of said deeds and that the lands be subjected to appellee's judgment.

Appellants filed a joint answer denying that the said several conveyances were made with fraudulent intent, but stated the facts to be that on the 24th day of March, 1910, Pete Hernton was indebted to his wife in the sum of $450, and that he conveyed the forty acres and his undivided half interest in the eighty acres to his wife and daughter in compliance with a promise made to his wife in 1905, and as to those lands they pleaded the adverse possession of the wife. As to the town property it was alleged that the same was originally bought for Maymie Hernton, but through a mistake, deeds thereto were made to Peter Hernton, and they further claimed this last mentioned property as their homestead.

The court found that the conveyances were voluntary and fraudulent and cancelled same insofar as they pertained to the 120 acres of land. As to the property in Lewisville, the same was found to be the homestead of Pete Hernton, and the prayer of the complaint was denied and it was dismissed as to these lots. It is unnecessary, therefore, to consider whether any mistake was

made in the execution of the deed to these lots, and no complaint is made by appellee against the finding of the court below that the lots constituted appellants' homestead.

The point in the case is whether or not the conveyances to the lands were voluntary, and the chancellor specifically found the fact to be that they were. Without undertaking to set out the evidence in detail upon which this finding was based, it may be summarized as follows: That no contention was made that any consideration was advanced by the daughter for the interest conveyed to her further than a previous promise made by appellant, Pete Hernton, to his wife to so convey said lands. There was a conflict in the evidence as to whether or not Hernton was ever indebted to his wife as alleged by her. Her answer stated this indebtedness to be the sum of $450, but in her deposition she placed it at the sum of $700, and without reviewing the conflicts which appear upon this question, we think the chancellor's finding that there was no indebtedness is not contrary to the preponderance of the evidence.

It was further shown that, even though the consideration of $700 had been actually advanced, it was grossly inadequate. It was testified that Hernton made an agreement in 1902, and again in 1904, to deed his wife this land, and that again on the 29th of December, 1906, he promised her, if she would pay off a mortgage outstanding against this land, he would comply with his promises made in 1902 and 1904. It appears, however, that Hernton executed a mortgage on this land in 1905 to secure an indebtedness due by him and that his wife joined for the purpose of relinquishing her dower and homestead, and that on the 29th of December, 1906, she again joined in a mortgage on the same lands relinquishing her dower and homestead. It was further shown that after taking over all of her husband's lands in 1910 she paid notes aggregating $650 executed in 1907 due by her husband on the Lewisville property, and that the property was assessed for taxes in the name of Pete

Hernton and was paid on by him in his own name. And it is not denied that the conveyances by Hernton to his wife and daughter divested him of all visible property and left nothing which could be reached by execution.

We think, too, that the claim of adverse possession was colorable and fictitious and is unsupported by the evidence.

(1)   In the case of *Wilks* v. *Vaughan*, 73 Ark. 174, it was said: ''It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors.''

This doctrine has been reasserted in a number of subsequent cases, for a list of which see cases cited in *Papan* v. *Nahay*, 106 Ark. 230, and also *Simon* v. *Reynolds-Davis Grocery Co.*, 108 Ark. 164.

(2)   It is urged that appellee should not be allowed to sue for the reason that he was not a creditor and that it would be inequitable to permit him to subject the lands sought to be uncovered to the satisfaction of the debt asserted, because of the circumstances under which appellee became the owner thereof. It is shown that appellee was a director of the bank, and was largely indebted to it at the time of its failure, and that this indebtedness was reduced to a judgment, which was never satisfied. That under the directions of the chancery court the assets of the bank, amounting to over $30,000, were sold to appellee for the consideration of $206, and that by this sale he extinguished the judgment against himself and acquired the interest which he seeks to assert by this lawsuit. This sale, however, was a public one, and has been approved and confirmed by the court which authorized it, and no attempt is made to show that any fraud was practiced by appellee in purchasing the bank's assets for a consideration so nominal, or that they could not have

been bought by any other person willing to pay more. It was shown by the receivers of the bank that they had realized upon all of the assets, which they regarded as of value, prior to the sale.

(3-4)   We know of no principle of equity which forbids appellee to maintain this suit simply because, for this nominal consideration, he extinguished the judgment against himself and acquired the one against appellant. So far as that question is concerned, his rights are the same as they would have been had he not been a judgment debtor.

Nor do we think that appellant's position is well taken that appellee was not a creditor within the meaning of the term as applied to suits to uncover property fraudulently conveyed. Appellants quote from 20 Cyc. 433, the following text:

"The general rule is that a purchaser at a judicial sale has the same right to attack a prior conveyance on the ground of it being made to defraud creditors as such creditors would possess, unless such purchaser had actual or constructive notice of the conveyance at the time of his purchase."

Three cases are cited in the note to sustain the qualification contained in the text.  But an examination of those cases discloses the fact that they do not warrant this qualification of the rule, but that the rule is correctly stated without the qualification there contained.  For cases on this subject, see Volume 24, Century Edition Am. Dig., under the head of "Fraudulent Conveyances," section 648, where a large number of cases are cited to sustain the following statement of the rule:

"A purchaser at a judicial sale has the right to attack a prior conveyance made by the judgment debtor as being fraudulent as against creditors."  See, also, the case of *Allen* v. *Kane,* 140 Pac. 534, 79 Wash. 248, where it is said:

"The term 'creditor' within the common-law rule that conveyances with intent to defraud creditors shall be void, includes * * * every one having a right to require

the performance of any legal obligation, contract or guaranty, or a legal right to damages growing out of contract or tort.''

Finding no error in the decree, it is affirmed. ·