## MILLER v. HUGHES.

1. A complaint to set aside a sale and mortgage as void under the assignment act, should be dismissed on demurrer, where it makes no allegation that the sale or mortgage were made to creditors of the assignor, or for their benefit.

2. In action by a creditor to set aside transactions alleged to have been made by the debtor for the express purpose of defrauding his creditors, it is not necessary to allege that plaintiff has recovered judgment on his demand and obtained a return of *nulla bona;* it is sufficient to allege the fraud, the collusion of the parties to the transaction in the fraud, and the insolvency of the debtor.

3. Equity has concurrent jurisdiction with the law courts of cases involving fraud ; and where a creditor complains of fraud on the part of his debtor and shows that his rights will be injuriously affected thereby, he states a case of which a Court of Equity will take cognizance, without requiring him to first exhaust his legal remedies.

4. Under the Code, which permits legal and equitable causes of action to be united in the same complaint, a creditor may demand judgment on his chose in action and in the same action ask relief from a fraud which would defeat its payment.

5. Relief may be granted according to the facts stated in a complaint, although beyond the judgment specifically prayed for.

6. The demurrer to the complaint in this case should have been overruled, and the defendants allowed proper time to answer.

Before HUDSON, J., Hampton, March, 1890.

The complaint in this case was as follows :

The plaintiffs, complaining on behalf of themselves and all

other creditors of the defendant, L. F. Hughes, who shall in due time come in and seek relief by, and contribute to the expenses of, this action, allege :

I. That at the time hereinafter mentioned, the plaintiffs, Theodore K. Miller, Daniel Miller, Robert C. Davidson, I. Frank Supplee, and Richard M. Turner, were doing business in the city of Baltimore, under the firm name of Daniel Miller & Co.

II. That, between the 4th day of September, 1889, and the 12th day of September, 1889, the said L. F. Hughes became indebted to the plaintiffs as partners in the sum of nine hundred and twenty-nine dollars and seventy-two cents, for goods sold and delivered, as per account hereto attached as exhibit "A," and made a part hereof, of which account four hundred and forty-three 37-100 dollars is now due, and balance will be due in a few days.

III. That said L. F. Hughes and defendant, L. F. Brunson, about two years ago entered into a mercantile partnership, and carried on such business, advancing farmers to make crops, buying and selling commodities on credit, and taking mortgages and other security therefor in the name of Hughes & Brunson, and continued such business up to about six months ago.

IV. That after said dissolution, defendant L. F. Brunson held possession, not only of all said paper, but the stock in trade as well, but acknowledged that said Hughes still had an interest in the securities of the late firm, at least.

V. That shortly prior and subsequent to said dissolution of said firm of Hughes & Brunson, said L. F. Hughes, for the purpose of deception in procuring credit, and by some mysterious influence, obtained a high property rating in the two leading commercial agencies of the United States, which rating was untrue.

VI. That said L. F. Hughes, shortly after said dissolution of the said firm of Hughes & Brunson, and although the stock of goods of such firm were still undisturbed, left in the possession of his former partner, Brunson, who continued the business in his name, he (said Hughes) erected a small and cheap building or storehouse, about three miles from the town of Brunson, which he soon crammed with ten thousand dollars worth of goods, pro-

cured as hereinafter stated, but which goods, for reasons herein-after stated, only remained there a short time.

VII. That said L. F. Hughes, having erected the storehouse aforesaid, about thirty feet by fifty, if so large, visited Baltimore and New York and other cities, and, on the strength of said false rating, and by promises too many to mention, bought on credit from unsuspecting merchants some ten thousand dollars worth of goods, some of the finest fabrics, to sell among a poor people in a sparsely populated country, after most of the cotton was gone to market, and to cram into said little storehouse, costing one hundred dollars, if that much.

VIII. That said large quantity of goods were out of all proportion to the trade of the section of country where said storehouse was situate and capacity of same; and said Hughes, in order to avoid suspicion and unfavorable comment, caused a quantity of said goods to be shipped to Campbellton, a station on the Port Royal and Augusta Railway, although Brunson is and was the home of said Hughes, and the depot where he had heretofore received his goods.

IX. That said Hughes made all large accounts payable very nearly the same time, which, in the light of subsequent events, was shown to be part and parcel of the original undertaking, to buy heavily on credit and not pay for the goods.

X. That on the twelfth day of November, 1889, Francis H. Leggett & Co., of New York, instituted a suit against said L. F. Hughes on a small account, which said Hughes, after frequent promises, had declared his inability to pay.

XI. That within three days after the summons had been served in said suit on said Hughes, and a short time before the large claims fell due, said Hughes, in order to defraud his creditors, pretended to sell all of the goods, of the value of eight thousand dollars or more, to his late partner, L. F. Brunson; and, in order to give some color to this transfer or assignment, said Hughes, or some one in his behalf, sent a hasty message by wire, as plaintiffs are informed, to defendants, L. Daniel & Co., at Augusta, Ga., to send a certain sum of money, about four thousand dollars, to Brunson town, to be used ostensibly as purchase money in this patent attempt to put the said goods beyond the reach of honest

creditors, and said amount of money was exhibited to certain parties, as plaintiffs are informed, which was supposed by said Hughes to have been all that was required to give validity to this fraudulent assignment against creditors.

XII. That defendant, L. F. Brunson, had every reason to know, and did know, that the object of defendant, L. F. Hughes, in endeavoring to transfer and assign the said large stock of goods in the manner and at less than half their costs aforesaid, the goods being new, was to prevent plaintiffs, in the said pending action, and other creditors of said L. F. Hughes, from collecting their just demands, said demands being for the purchase money of the identical merchandise; and said transfer is therefore void against creditors.

XIII. That said Hughes transferred, as aforesaid, all of his stock in trade, and never made, as is somewhat customary under like circumstances, a pretence of leaving a few worthless articles for his defrauded creditors.

XIV. That said transfer or assignment is fraudulent and void against creditors, and in violation of the statute of this State.

XV. And plaintiffs further allege, that while L. F. Hughes was a partner with L. F. Brunson, as aforesaid, he executed mortgages on his real estate (except, perhaps, his homestead) to defendants, Caroline Salinas, Edward Salinas, and A. J. Salinas, who were and are partners, doing business as A. J. Salinas & Son; and that, although large sums were paid on said mortgage during the existence of said partnership of Hughes & Brunson, and subsequently by L. F. Brunson and L. F. Hughes, yet no credits were placed on the record, and the creditors are uninformed as to the balance due defendants, Salinas & Son, on said mortgages, and they should be adjudged to declare same on oath.

XVI. That defendants, Z. Daniel & Co., well knowing the object of Hughes in attempting to transfer the said stock of goods to said Brunson, and having been hastily summoned from Augusta, Ga., to advance a certain amount of money to be seen by witnesses; and being warned by all the surrounding circumstances of the ulterior object in transferring or assigning the entire stock of goods to said Brunson, put up a certain sum of money—about one half of the value of the goods—which was held

out as the money paid by Brunson; whereupon a mortgage was drawn by L. F. Hughes from said L. F. Brunson to Z. Daniel & Co. on the stock of goods, as security for said money as claimed; which mortgage is, as stated, in the handwriting of L. F. Hughes, and bears date November 14, 1889, payable February 1, 1890, and given, as set out, to secure forty-five hundred dollars.

XVII. That said mortgage having been taken by Z. Daniel & Co. with full knowledge of the purpose of said transfer as aforesaid, is void against the creditors of said Hughes.

XVIII. That plaintiffs are informed and believe that Z. Daniel & Co. never advanced the said forty-five hundred dollars, the consideration of said mortgage, but that same was shown witnesses and soon afterwards returned to Z. Daniel & Co., and that they (Z. Daniel & Co.) will so declare under oath, which plaintiffs pray they may be adjudged to do.

XIX. That the defendant, Doctor Thomas, has purchased on credit from Hughes a tract of land in this county, known as "Oregon," and owes something on the purchase money, which when established should be ordered to be paid towards the settlement of the debts of said Hughes herein.

XX. That said Hughes is insolvent, and the stock of goods is perishable, and the rents of the mortgaged realty are being collected by him, and L. F. Brunson is not responsible for the value of said goods.

XXI. That the mortgages and assignment aforesaid constitute but one instrument in law, and are parts of one general plan to secure a preference to mortgagees and assignees at the expense of the general creditors of L. F. Hughes, *who was insolvent*, and said transactions are in fraud of sections 2014 and 2015 of the General Statutes of this State, and are void as aiding a debtor in disposing of his property to defeat creditors, or in being taken with sufficient knowledge of the intent of Hughes to defeat creditors.

Wherefore the plaintiffs demand judgment:

1. That said transfer or assignment to L. F. Brunson and the mortgage to Z. Daniel & Co. be adjudged fraudulent and void against the plaintiffs and all other creditors of L. F. Hughes who shall come in and share the expenses of this action.

2. That a receiver of all the property and effects of L. F. Hughes be appointed.

3. That the defendant, L. F. Brunson, be required and adjudged to account for all the property received by him under said transfer or agreement, and from all the proceeds arising from the sale thereof, and deliver same to the receiver.

4. That A. J. Salinas & Son may be adjudged to establish and set forth all sums due them on said mortgages, and exhibit the amounts paid them thereon.

5. That said Doctor Thomas be adjudged to declare the amount due by him on the purchase of the "Oregon" land, and be ordered to pay same into court, for the benefit of said creditors hereunder.

6. That the defendants be in the meantime enjoined from disposing of any of said property or paying away any of the proceeds thereof, or in any wise interfering therewith.

7. That the receiver be directed to sell the property and collect the assets of said L. F. Hughes, and hold proceeds thereof for distribution among the creditors of L. F. Hughes, under the order of this court, and that the costs and expenses of this action may be paid therefrom.

From the order of the Circuit Judge sustaining a demurrer to this complaint, the plaintiff appealed on the following exceptions: I. That his honor erred in deciding that the allegations in the complaint were not sufficient to constitute a cause of action under the assignment law of this State. II. That his honor erred in deciding that the action was solely to set aside a fraudulent transfer of debtor's property. III. That his honor erred in deciding that a complaint for the benefit of simple contract creditors to set aside a fraudulent transfer of debtor's property, is bad on demurrer, although insolvency and positive fraud are alleged and admitted by the demurrer. IV. That his honor erred in deciding that the complaint does not state facts sufficient to constitute a cause of action, and dismissing the same, although indebtedness of defendant, Hughes, is alleged and admitted by the demurrer. V. That his honor erred in his strict construction of the complaint, whereas he should have applied the liberal rules of pleading under the Code. VI. That his honor erred in not seeing

that there are three distinct causes of action in the complaint, to wit, indebtedness, fraudulent transfer, and assignment at the expense of the general creditors, all of which are sufficiently stated to escape a demurrer. VII. That his honor erred on each and every cause of action in dismissing the complaint.

*Mr. W. S. Tillinghast,* for appellant.

*Mr. I. L. Tobin,* contra.

December 8, 1890. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The sole question raised by this appeal is whether the Circuit Court erred in sustaining a demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. In such a case it is usual to set out either a copy of the complaint, or to state substantially all of the allegations found in it; but as the present complaint is very long, and contains some allegations which do not appear to be pertinent to our present inquiry, we will content ourselves with stating substantially such of its most material allegations as will enable us to determine the question presented, trusting that the reporter will incorporate in the report of the case a copy of the complaint.

Amongst other allegations we find the following: That between the fourth and twelfth days of September, 1889, the defendant, Hughes, became indebted to plaintiffs in the sum of $929.72 for goods sold and delivered, of which the sum of $443.37 was then due, and the balance would become due "in a few days;" that the said Hughes and the defendant, Brunson, had been engaged in the mercantile business as partners for the past two years, and continued such business up to about six months before the filing of the complaint; that after the dissolution of said partnership the defendant, Brunson, held possession of all the stock in trade, as well as the securities or choses in action of the late firm, acknowledging, however, his accountability to said Hughes for his interest in the latter; that shortly prior, and subsequent to the dissolution of said partnership, the said Hughes, "for the purpose of deception in procuring credit and by some mysterious influ-

ence," obtained a false high rating in the two leading commercial agencies of the United States; that said Hughes, soon after the dissolution of said partnership, upon the strength of such false rating. bought on a credit a stock of goods in New York and Baltimore, much larger and of much finer quality than was suitable for the market where he ostensibly proposed to sell them, and placed them in a small new store which he had erected some three miles from the town of Brunson, and to avoid suspicion and comment, had a large quantity of them shipped to a station on the Port Royal Railroad, although the town of Brunson was then his place of residence and was the station where he had previously had his goods shipped to; that on the 12th of November, 1889, Leggett & Co., of New York, commenced a suit on a small account against said Hughes, which he had declared his inability to pay, and within three days thereafter, and a short time before the accounts for his large purchases became due, which had been arranged so as to become payable about the same time, the said Hughes, "in order to defraud his creditors, pretended to sell all of the goods, of the value of eight thousand dollars or more," to his friend and late partner, the said Brunson; and in order to give a color of reality to such pretensive sale, the defendants, Daniel & Co., were induced to send to the town of Brunson a large sum of money to be exhibited to witnesses as a part of the price paid for said goods by the said Brunson, who executed a pretensive mortgage on the stock of goods to secure repayment of the same, although the said money was immediately returned to said Daniel & Co. as soon as it had served its purpose as aforesaid; that the defendant, Brunson, as well as the defendants, Daniel & Co., were fully aware of the fraudulent purpose of said Hughes in making said pretensive sale; that the said Hughes is insolvent, and the stock of goods is perishable, and the defendant Brunson is not able to respond for the value of the goods; that these transactions are in fraud of sections 2014 and 2015 of the General Statutes and are void.

Wherefore judgment is demanded, amongst other things, that the said pretensive sale to Brunson and mortgage to Daniel & Co. be adjudged fraudulent and void against the plaintiffs and all other creditors of Hughes, who shall come in and share the ex-

penses of this action ; that a receiver of all the property of said Hughes may be appointed ; that the defendant Brunson may be required to turn over to the receiver all the property received by him under such pretensive sale, and account for the proceeds of such as he may have sold ; that defendants may be enjoined from disposing of any of said property or paying away any of the proceeds thereof; that the receiver be directed to sell the property and collect the assets of said Hughes and hold the proceeds thereof for distribution amongst the creditors of said Hughes under the orders of the court.

The Circuit Judge in a short order rendered judgment that the complaint be dismissed, on the ground that it does not state facts sufficient to constitute a cause of action, saying : "The allegations of the complaint are not sufficient to bring the same within the terms of sections 2014 and 2016, Revised Statutes ; but it appears to be a proceeding to set aside a fraudulent conveyance, and does not allege that the plaintiffs are judgment creditors, and have exhausted their legal remedies." From this judgment plaintiffs appeal upon the several grounds set out in the record.

We agree with the Circuit Judge that the action cannot be sustained under the assignment law, for the reason that there is no allegation that either Brunson, to whom the sale was made, or Daniel & Co., to whom the mortgage was given, were creditors of Hughes, nor is there any allegation that such sale and mortgage, or either of them, was made for the benefit of any creditors of Hughes. So that we do not see that the assignment law has any application to the case as made by the complaint.

But we do not agree that in a case like this it was essential to allege that the plaintiffs had recovered judgment and obtained a return of *nulla bona* on their execution. It is quite true that such an allegation is necessary in a complaint to set aside a *voluntary* conveyance upon the ground of *legal* fraud merely, for the reason that in such a case there is no fraud, which is the real foundation of the action, until it has been made to appear that the debtor has no other property to which his creditor may resort for payment of his debt except that embraced in the voluntary conveyance ; and this, it is supposed, can best be shown by the return of *nulla bona.* See the remarks of Chief Justice Simpson

in reference to this subject in *Suber* v. *Chandler*, 18 S. C.. 526. But where the conveyance or other transfer is assailed upon the ground of actual moral fraud in its inception, the case, as it seems to us, stands upon a totally different footing, and should not be subject to the same arbitrary rule in regard to the mode of proof of one of the facts necessary to be established; for it certainly is an arbitrary rule that the fact that there is no other property of the debtor to which the creditor can resort for satisfaction of his demand, except that embraced in the fraudulent conveyance, can only be established by a *nulla bona* return.

The true view of this matter is clearly and strongly presented by that eminent jurist, Johnston, Ch., in his Circuit decree in *Pettus* v. *Smith* (4 Rich. Eq., at pages 200, 201), where, after saying that some of the cases cited to support what we have ventured to designate as an arbitrary rule, have been strained beyond principle, he says: "The principle is sound that a party holding a legal demand, and especially if he hold a legal remedy for it, is not entitled to call on this court to aid him, unless he can show that he needs its assistance. He must state such a case; and, if required, he must give reasonable proof of its existence. But a party undoubtedly does need equitable assistance, if his debtor is insolvent, except as to property so covered or encumbered that it cannot be reached without the intervention of this court. The only question is, whether there is any principle restricting the proof of insolvency to any particular method. Can it be proved only by the actual issuing and the actual return of process for the seizure and sale of property? Suppose that before a *fi. fa.* can be issued, or after the issue of a *fi. fa.* and before it is returnable, a fraud is discovered, consisting in a combination of third persons with the debtor, by which the property is secreted and about to be removed out of reach, can no application be made to this court until the *fi. fa.* is returned and the fraud actually and perhaps irremediably completed? The true doctrine, it appears to me, is that the party asking the aid of equity, in such cases as this, is bound to show that, without fault on his part and after the exercise by him of reasonable diligence, he has no means of obtaining satisfaction of his claims without the aid of this court; and as to the insolvency of his debtor, he is bound to make such

proof only as under the circumstances is reasonable and satisfactory—such proof of insolvency as in all other cases is competent and satisfactory and no more."

It is true that this is taken from a Circuit decree and is not authoritative, and it is likewise true that this Circuit decree was reversed, not, however, because of any error in the views presented in the passages quoted from, but upon a totally different and independent ground; and there is not a word in the opinion of the Court of Appeals, which was delivered by the same Chancellor who prepared the Circuit decree, which indicates the slightest dissatisfaction with that portion of the Circuit decree from which we have so liberally quoted. While, therefore, it is not authority binding upon us, yet coming from so high a source, it is entitled to the highest consideration, and we have not hesitated to adopt its language as presenting the true view of the question under consideration in a much clearer and stronger light than we could hope to do.

This view is not without support from the highest judicial tribunal in the United States. In *Case* v. *Beauregard* (101 U. S. Rep., at page 690), Mr. Justice Strong, in speaking of this subject, says: "But after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a Court of Equity may be made otherwise to appear. Accordingly the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form. '*Bona sed impossibilia non cogit lex.*' It has been decided that where it appears by the bill that the debtor is insolvent, and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference," citing the authorities. Again, he says: "So it has been held that a creditor, without having first obtained a judgment at law, may come into a Court of Equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him," again citing the cases. The following cases show that where the issue of insolvency arises in other classes of cases, no particular

mode of proof of insolvency is required, but any evidence which establishes the fact satisfactorily is sufficient. *Eddings* v. *Glass-cock*, 1 Nott & McC., 295; *Wilson* v. *Miller*, Harp., 437; and *Arnold* v. *Waters*, 8 Rich., 433.

It seems to us, therefore, that when a creditor files his complaint to set aside a conveyance for actual moral fraud, committed by a combination and collusion of his debtor, who is alleged to be insolvent, with third persons, the failure to allege that he has recovered judgment and obtained a return of *nulla bona* on his execution issued to enforce the same, is not fatal to the complaint on demurrer. The foundation of the cause of action in such a case is a fraud, and if the plaintiff after alleging the fraud makes further allegations showing that his rights are impaired or destroyed by the perpetration of the fraud, then he states a cause of action. Of course, the mere fact that his debtor has perpetrated a fraud, even of the grossest character, gives him no cause of action; but when he alleges other facts tending to show that his rights are injuriously affected by such fraud, then he states a complete cause of action, which, if established, will entitle him to relief. Thus where the creditor alleges that his debtor is insolvent, and by collusion with third persons has fraudulently disposed of his property, which was liable for the debt, a complete cause of action is stated.

It is insisted, however, that until the creditor has exhausted his legal remedies by prosecuting his claim to judgment and procuring a return of *nulla bona* on his execution, a Court of Equity has no jurisdiction to afford him relief. But fraud is peculiarly a matter of equitable cognizance, and when fraud is alleged, and the further allegation is made that such fraud is injurious to the creditor's rights, it seems to us that a Court of Equity has jurisdiction of such a case. In such a case the creditor does not ask the aid of the Court of Equity, upon the ground that he can obtain no relief at law, but his claim to the aid of equity is based upon the fraud which has been practised upon him, and from which the Court of Equity has jurisdiction to relieve him. It is not universally true that a plaintiff must show that he has no plain adequate remedy at law before he can invoke the aid of a Court of Equity; for there are some cases in which the jurisdictions are con-

current, and fraud is one of those matters. Accordingly it has always been held in this State that where a creditor finds a fraudulent deed of real estate in the way of enforcing his claim, he has a choice of remedies. He may prosecute his claim to judgment and have the land sold under his execution, ignoring the fraudulent deed, and after purchasing the same at such sale, bring his action at law to recover the land, or he may proceed on the equity side of the court to have the deed set aside for fraud and the land sold for the payment of his debt. *Burch* v. *Brantley*, 20 S. C., 503, and the cases there cited ; *Amaker* v. *New*, *ante* 28.

It is further urged that the claim of the plaintiffs, being a plain legal demand, should first be established by a judgment at law before the aid of equity can be invoked. Whatever embarrassment this might have offered under our former system of judicature, when law and equity were administered by different tribunals, cannot be felt now under our present system, especially after the Code has provided that both legal and equitable causes of actions may be united in the same complaint. We do not see, therefore, why the plaintiffs may not demand judgment for the amount alleged to be due them on the law side of the court, and in the same action ask relief on the equity side from the fraud which they allege will render their action fruitless. The fact that in this complaint there does not seem to be any formal demand for judgment for the amount due them by the defendant, Hughes, is of no consequence, provided the complaint contains other allegations, as we think it does, sufficient to warrant such judgment.

It seems to us that the complaint in this case states facts sufficient to constitute a cause of action, and that the demurrer should have been overruled and the defendants allowed proper time to file their answers.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.