WYMAN CO. et al, Respondents, v. FARMERS ELEVATOR CO., Appellant.

(232 N. W. 259.)

(File No. 6849. Opinion filed October 6, 1930.)

*O'Keeffe & Stephens,* of Pierre, for Appellant.

*F. E. Snider,* of Faulkton, *Fowler, Carlson, Furber & Johnson,* of Minneapolis, Minn., *Todd, Fosnes & Green,* of St. Paul, Minn., and *Sterling, Clark & Grigsby,* of Redfield, for Respondents.

MISER, C.  This appeal is from an order overruling demurrers to an amended and a supplemental complaint of the plaintiffs. On account of their length these pleadings cannot be set forth in full.  The plaintiff, C. C. Wyman & Co., hereinafter called the Wyman Company, and the plaintiff, Deere & Webber Company, hereinafter called the Webber Company, are creditors of the defendant company holding some, but inadequate, security for their several claims.  Defendant company is insolvent.  The relief sought in the amended complaint is a judgment decreeing that defendant is indebted to the Wyman Company in the sum of $19,297.04 and to the Webber Company in the sum of $12,798.70; that all of the property and assets of the defendant be decreed to be a trust fund, to be held for the benefit of the plaintiffs and all other persons who on final hearing of this cause may be found to be entitled to receive the same; "that said property and assets be converted into money by sale or otherwise as the Court may direct, and the proceeds arising from said sale of said property and assets may be applied, first, in the discharge and payment of the encumbrances thereon for the preservation of other assets of the defendant, according to the rights and equities of the respective holders thereof, that an account may be taken as to the mortgages, liens and encumbrances held by these plaintiffs respectively, the validity thereof established as well as the encumbrances and liens held by other creditors of the defendant; and that all such mortgages, liens and encumbrances may be enforced herein under the direction of the court, and that the assets of the company may finally be distributed among those who are entitled thereto, and that the business of the defendant be discontinued and finally wound up; that immediately the Court appoint some discreet and proper person or corporation as Receiver in equity with the usual powers of Receivers in like cases, to take charge and possession and control of all of the property and assets, legal and equitable, including all books,

records and papers of and belonging to the defendant, and to continue and carry on its business as a going concern under the orders and direction of the Court, subject, however, to such conditions and limitations for the protection of the creditors and all other persons interested in said property and assets as the Court may determine; that said Receiver be empowered to sell and dispose of the property and assets of the defendant, and otherwise reduce the same to cash from time to time as the Court may order and determine, and to have such other power and authority as the Court may deem expedient and wise; that all of these things be done during the pendency of this suit as well as afterwards."

Prior to the filing of this amended complaint in December, 1927, and at the time of filing his original complaint on April 8, 1927, the trial court entered an order appointing a receiver pendente lite. The receiver so appointed proceeded, as ordered, to operate the elevator and hardware business of defendant company and to collct the notes and accounts receivable and to dispose of all the merchandise and physical properties of the defendant corporation.

On or about August 4, 1927, the defendant answered denying that its debts aggregated the amount claimed by plaintiffs, alleged that plaintiffs' security was adequate for the payment of any indebtedness due them, denied that it was insolvent, and alleged certain counterclaims.

Prior to the date of this answer, the receiver made a report setting out the bid of one Benson for the elevator buildings and equipment, the hardware store building and fixtures and the stock of merchandise therein, also that, after disposing of the foregoing the only assets remaining would be the accounts and notes receivable, and asked for an order confirming the sale to Benson. This report was brought on for hearing on order to show cause. At this hearing one Hanson and other stockholders of defendant company made higher bids for the property. The defendant by written response at said hearing objected to the Benson offer or to any sale at that time, and said that, if the property was to be sold, it should be sold to the Hanson bidders in order that the stockholders and guarantors of the defendant's obligations should be given an opportunity to recoup so far as possible any loss occasioned by the sale at that time. The trial court ordered and confirmed the sale

to the Hanson bidders. Thereafter, in December, 1927, by leave of court after hearing on order to show cause, the plaintiffs served and filed the amended complaint demurred to. On February 8, 1928, defendant demurred to this amended complaint. Thereafter, on March 9, 1928, after hearing at which the defendant appeared by counsel and consented to the sale, the trial court confirmed the sale of the bills and accounts receivable by the receiver. This consent by defendant was on the ground that the sale was as advantageous to it and that as much could be realized thereby as could be realized by liquidation by the receiver or by plaintiffs as pledgees of the bills receivable so sold, but the order recited: "The defendant does not, by consenting to this sale, waive any defenses to the main action."

Thereafter, but before any order had been made on defendant's demurrer of February 8, 1928, the plaintiffs filed a supplemental complaint dated May 31, 1928. It repleaded all of the allegations of the amended complaint, alleged the facts contained in the foregoing statement and that the receiver had reduced to cash substantially all of defendant's assets, including that which constituted the security of plaintiffs' claims; that after disbursing $24,783.47 under the order of the court the receiver had on hand $10,534.41 of which $3,500 should be paid to the Wyman Company and $3,780 to the Webber Company as being the proceeds of the sale of security held by them; that the amount still due the Wyman Company was $4,807.64 and to the Webber Company $9,607.54, and that the balance after distributing the $7,280, as above stated, would be insufficient to pay more than 15 per cent of the amount due unsecured creditors, including the unsecured balances due plaintiffs. The prayer of the supplemental complaint was as follows: "Wherefore the plaintiffs pray judgment as in the Amended Complaint herein and that their expenses and disbursements incurred as herein alleged in connection with the caring for, securing and renewing of their collateral security and in and about the collections made thereon may be determined and confirmed and approved in the several sums herein alleged and that the right of the respective plaintiffs to retain and apply the balances after paying such expenses and disbursements to their respective indebtednesses and interest may be approved and confirmed; that the plaintiff, Webber Company, may have an accounting herein from the Receiver

for the proceeds of the goods held by the defendant under conditional sales contract as herein alleged and that the remaining property so held may be reduced to cash under the direction of the court and the proceeds to the extent of the purchase price thereof may be paid over to the Webber Company to apply on its indebtedness aforesaid."

The first question to be answered in determining the sufficiency of these complaints is, What is the nature of the cause of action alleged? Appellant contends that, if a cause of action is alleged, it is one in which several creditors, having independent claims at law, seek to have a receiver appointed for a corporation which they allege to be insolvent. Appellant contends that such an action cannot be brought in South Dakota, because, under section 2475, Rev. Code 1919, the appointment of a receiver is an ancillary remedy in aid of some other primary object of litigation, and the primary object of this action is the appointment of a receiver.

Section 2475, so far as appellant contends it to be applicable, is as follows: "A receiver may be appointed by the court in which *an action is pending,* or by the judge thereof: * * * 5. In the cases where a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights." Our section 2475 with its six subdivisions is substantially identical with section 564, Cal. Code Civ. Proc., as construed by the California court in what is known as the French Bank Case, 53 Cal. 495, 553. For that reason appellant quotes with confidence therefrom as follows: "There is, of course, no such thing as an action brought distinctively for the mere appointment of a Receiver—such an appointment, when made, is ancillary to or in aid of the action brought. Its purpose is to preserve the property pending the litigation so that the relief awarded by the judgment, if any, may be effective." There are courts which hold to the contrary (23 R. C. L. 11; 4 Ann. Cas. 67; Supreme Sitting of the Order of Iron Hall v. Baker, 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210), but respondents do not contest the point, so it is unnecessary to decide it.

But respondents contend that this is not "an action brought distinctively for the mere appointment of a receiver," but that it is an action in the nature of a creditor's bill. To this appellant objects that a court of equity would not entertain a creditor's bill

until after the creditor had reduced his claim to judgment in a court of law and had execution returned unsatisfied. Respondents admit that this was true under the common law and ancient chancery practice, but claim that under modern practice there are exceptions to that rule. Respondents' views are well stated in Simonton v. Simonton, 33 Idaho, 255, 193 P. 386, 387, wherein the Idaho court says: "Numerically the weight of authority is that a court of equity will not entertain a creditors' bill until after the creditor had reduced his claim to judgment in a court of law. 15 C. J. 1388, § 16; 8 R. C. L. 20, § 24; extended note to Ziska v. Ziska, 20 Okl. 634, 95 P. 254, 23 L. R. A. (N. S.) 1. * * * The reason for the rule * * * which denied him the right to proceed in equity until he should have reduced his claim to judgment in a court of law, was that the debtor was entitled to have the legal action tried before a jury. It is apparent that under the code practice this reason fails. * * * It must be conceded, however, that the authorities are not at all harmonious; some courts still, even under the Code, maintaining the old distinction. Other courts, however, have boldly departed from the old rule, and under the code system permit a simple contract creditor to recover judgment for the indebtedness, and in the same action avail himself of the equitable power of the court to pursue property which could not be reached in an action at law. Shirley v. Waco, etc., Co., 78 Tex. 131, 10 S. W. 543; Miller v. Hughes, 33 S. C. 530, 12 S. E. 419; Bank v. Harris, 84 N. C. 206; Vail v. Hammond, 60 Conn. 374, 22 A. 954, 25 Am. St. Rep. 330; First National Bank of Globe v. McDonough, 19 Ariz. 223, 168 P. 635; Morse v. Slason, supra, 13 Vt. 296; note, 23 L. R. A. (N. S.) 84; 8 R. C. L. 25, § 29; 15 C. J. 1388, § 14; Fidelity Savings & Loan Ass'n v. Reese, 41 S. D. 546, 171 N. W. 812. We are of the opinion that the latter is the more just and enlightened view, and represents the trend of modern authority. It is in keeping with the spirit of the Code, prevents circuity of action, avoids a multiplicity of suits, saves needless delay and expense, and promotes a more speedy and efficient administration of justice."

In Fidelity Savings & Loan Association v. Reese, supra, this court said: "The rule that legal remedies must be exhausted before equity will entertain an action to determine the validity of a transfer made by a debtor arose when the courts of law and equity

were separate. It rested upon two grounds: That a judgment and execution returned unsatisfied were the best evidence of the existence of the debt claimed; that legal tribunals should adjudicate legal claims. * * * Certainly the second ground can have no standing whatever where, as in this state, we have but one court affording both legal and equitable relief." 41 S. D. 546, 171 N. W. 812, 814. To the same effect, see Murray v. Sioux Alaska Mining Co. (C. C. A.) 239 F. 818, 15 C. J. 1390, § 22, note 77. In the case of Case v. Beauregard, 101 U. S. 690, 25 L. Ed. 1004, it is said by the Supreme Court of the United States: "But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. * *.* Neither law nor equity requires a meaningless form."

In Austin v. Morris, 23 S. C. 393, 402, 403, Mr. Justice Mc-Gowan asks: "Why insist upon that evidence if there is other perfectly satisfactory evidence of the fact in question? Especially if the circumstances are such that the delay in getting judgment may be fatal to the relief sought?"

While, therefore, the pleadings demurred to are not creditor's bills in the strictest sense, yet equity has often taken cognizance of similar proceedings by creditors of insolvent corporations to compel distribution of assets. Sometimes the pleading asking for this relief is called a creditor's bill and sometimes not. 8 R. C. L. 25, 26, 27, § 29; 15 C. J. 1382, note 8, and cases cited. In such suits receivers have been appointed. Northwestern National Bank v. Mickelson-Shapiro Co., 134 Minn. 422, 159 N. W. 948; Matter of Reisenberg, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403; Tradesman Pub. Co. v. Knoxville Car Wheel Co., 95 Tenn. 634, 32 S. W. 1097, 31 L. R. A. 593, 49 Am. St. Rep. 943; 7 R. C. L. 747. See Gates v. McGee, 15 S. D. 247, 88 N. W. 115.

Insolvency of the defendant could not be more clearly shown by a return nulla bona than by the facts not merely alleged but substantially proven in the pleadings demurred to. Moreover—by the demurrers thereto—there are admitted the debts due respondents as well as the inadequacy of their security; default in payment of the notes given in evidence of such indebtedness; the retention of title by plaintiff, the Webber Company, of a large amount of

machinery sold to defendant and not paid for by it; a debt of $30,000 to other creditors, past due and subject to immediate suit; increasing insolvency; the sale by defendant of a large amount of grain and merchandise on credit to irresponsible persons, so that not over 10 per cent of defendant's receivables are immediately collectible; that defendant's officers threaten to pursue their disastrous policy of extending liberal credits; that among the liabilities are storage and warehouse receipts which at the prices of grain then prevailing amount to $9,800, against which defendant company has as an asset grain of a value not exceeding $800 and no money whatever; the payment of dividends to stockholders, notwithstanding defendant's insolvency and the threatened payment of another dividend; dissension among the directors as to the management of defendant's business; and all the allegations of fact from which the foregoing statement as to the appointment of a receiver and the administration of his duties has been abstracted.

Whether, therefore, the pleadings demurred to may properly be designated creditor's bills or not, they do state a cause of action on the equity side of the court and are not merely for the appointment of a receiver. They contain allegations of fact amply sufficient to have defendant corporation declared insolvent, for the marshaling of its assets, the sale of the securities held by plaintiffs and other corporate property, the equitable distribution of its assets among its creditors as well as for the appointment of a receiver as ancillary relief. This view makes it unnecessary to consider separately the five grounds of demurrer stated.

We are of the opinion that the orders overruling the demurrers should be, and they are, affirmed.

BROWN, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.