[No. 27694.   Department One.   June 8, 1940.]

I. N. PEEPLES, *as Receiver, Appellant,* v. SAMUEL E. HAYES *et al., Respondents.*[1]

¹Reported in 104 P. (2d) 305.

*Kennett & Benton,* for appellant.

*C. P. Borberg,* for respondents.

ROBINSON, J.—This action was brought in the superior court by the receiver of the Sand Point Golf Club, a corporation, to set aside certain transfers of personal property made by that corporation to the defendants, on the ground of unlawful preference. The preferences were alleged to have been given on or about October 27, 1930, and March 14, 1933. The superior court held that there was an unlawful prefer- ence given on the latter date, but that the action is barred by the statute of limitations.

The appellant states in his brief that the appeal presents the following questions:

"(a) Is appellant's action barred by the statute of limitations?

"(b) If appellant's action is not barred by the statute of limitations, may appellant recover the whole sum of $10,000 with interest from the respondents (that being the value of the chattels illegally trans- ferred to respondents) or are the respondents entitled

to have offset against said $10,000 the deductions allowed them by the trial court in finding No. VI?"

As we have come to the conclusion that question (a) must be answered in the affirmative, it will not be necessary to trace or set out in detail the complicated series of transactions between the parties. For our present purpose, it is only necessary to know (1) that the defendants secured an unlawful preference from the golf club on March 14, 1933; (2) that an application for the appointment of a receiver for the corporation was filed on September 17, 1937; (3) that the plaintiff was in due course appointed as receiver and served and filed his complaint in the action during the following February, within six months of the date of application; (4) that all claims allowed by the receiver were in existence when the unlawful preference was made; and (5) that none of them had been reduced to judgment at the time this action was commenced. To this may be added that subsequent discovery of concealed fraud is not relied on, or at least cannot properly be relied on, to toll the limitation period which may be found applicable.

A formal bill of sale carrying out the transaction of March 14, 1933, was filed on the succeeding May 5th. It is possible, and perhaps probable, that the creditors of the corporation, or at least some of them, did not know of the transfer; but it is well settled that mere ignorance of a cause of action does not toll the statute of limitations. *Cornell v. Edsen,* 78 Wash. 662, 139 Pac. 602, 51 L. R. A. (N. S.) 279; *Shaw v. Rogers & Rogers,* 117 Wash. 161, 200 Pac. 1090.

The appellant's first contention is that the time to bring a suit to recover an unlawful preference is not limited by any statute other than Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1], Laws of 1931, chapter 47,

p. 160, § 1, and his second is that, in any event, such an action as this does not accrue until the receiver is appointed.

In setting up our limitation system, the legislature provided a limitation for every kind of action which can be brought in our courts, except, of course, those actions brought to enforce some right of the sovereign. This is the holding in *Reeves v. Davis & Co.*, 164 Wash. 287, 290, 2 P. (2d) 732, and of a number of prior decisions therein cited. No other conclusion was, or is, possible. From the earliest territorial days, our statutes have contained the provision now appearing in Rem. Rev. Stat., Title II, chapter 3, entitled: "Limitation of Actions," as § 165 [P. C. § 8172]. This section reads as follows:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

Appellant contends, however, that the limitation provided in § 5831-1 is exclusive and provides the only applicable period. This section reads as follows:

"Actions in the courts of this state by a trustee, receiver or other liquidating officer of an insolvent corporation, to recover a preference as herein defined may be commenced at any time within six months from the time of the filing of the application for the appointment of such trustee, receiver or other liquidating officer."

If this be the only limitation upon such an action, the easily possible consequences are somewhat startling. If there be no other limitation, a transfer made during a period of insolvency, ten, twenty, or thirty, or any number of years before, may be set aside as a preference if a receiver brings suit within six months after the application for his appointment is made, and no creditor of a corporation who receives payment of

his claim in money or property can rest assured that he may not be called upon, in the far distant future, to refund the payment.

The fact that statutes of limitation, properly so-called, are statutes of repose, enacted to prevent just such consequences as these, at once suggests that § 5381-1 was not intended to operate as a statute of limitation, in the sense the word "limitation" is used in chapter 3, Title II, Remington's Revised Statutes. We have, in fact, so held in *Morris v. Orcas Lime Co.*, 185 Wash. 126, 53 P. (2d) 604. In speaking of the limitation provided in § 5831-1, the court said:

"The limitation is not one that goes to the remedy of a defendant, like the ordinary statute of limitation, but it goes to the cause of action or right to sue. The time prescribed—six months from the time of filing the application for appointment of the trustee for the *commencement* of the action—is a condition to the enforcement of the liability or the trustee's right of recovery, an element in the right itself. The right falls with the failure to commence the action within the allotted time."

The ordinary statute of limitation is enacted for the benefit of those against whom claims are made; that is, for the benefit of defendants. It in no way affects the plaintiff's right, and gives the defendant a privilege only, which privilege may be exercised or waived at defendant's option. On the other hand, the limitation provided by § 5831-1 is a condition of the plaintiff's asserted right, and the absence of allegations showing that the action has been commenced within the period limited renders his complaint demurrable for want of facts.

Furthermore, the limitation is not for the benefit of those against whom actions are brought, but it is primarily for the benefit of the creditors of the insolvent

corporation on whose behalf the action is prosecuted. Its primary purpose is to insure that their rights in the trust fund will be enforced promptly and without unreasonable delay.

When does such an action as this accrue? The appellant receiver contends that, in the very nature of things, it cannot accrue until the receiver has been appointed. It is said, in his brief:

"It necessarily follows that the cause of action to recover the unlawful preference did not accrue until the appellant was appointed as receiver, and it necessarily follows from that that the statute of limitations could not have commenced to run until the appellant was appointed as receiver."

In this statement, the appellant refers to the ordinary statute of limitations. If the statement is true, we may note, parenthetically, that it marks another difference between the ordinary limitation and the limitation provided in § 5831-1; for there can be no question but that the latter limitation begins to run before the receiver is appointed. By the express terms of the statute, it begins to run upon the filing of the application for his appointment. In practice, it almost invariably begins to run some days before, and sometimes it begins to run weeks before, the receiver is appointed.

We see no reason why the ordinary statute of limitation should not also begin running before the receiver is appointed. His appointment creates no cause of action. He is appointed to enforce the already existing rights of action of the creditors, in this case, rights of action which accrued on March 14, 1933. It appears from the receiver's own testimony that all of the creditors' claims allowed by him were in existence on, and prior to, that date. The rights of action which the receiver seeks to enforce are their rights of action,

and they arose when the corporation, on March 14, 1933, then being insolvent, transferred to the defendants property which it held in trust for all of its creditors, and, therefore, in which the creditors in whose behalf the receiver sues in this action had a trust interest.

■ ■ Appellant contends, however—and supports his contention by forceful argument, buttressed by a formidable array of authority—that, since the creditors had never reduced their claims to judgment, they could not bring individual actions to set aside the transfer, or for any relief with respect thereto, but could only secure relief through a liquidating receivership. Following this, and admitting, for the sake of argument only, that the ordinary statute of limitation is applicable, appellant urges that, upon every just principle, the statute should be regarded as tolled until a receiver is actually appointed. Before discussing in detail the primary proposition upon which this contention rests, we suggest that, in view of the fact that the defendants wrongfully took property on March 14, 1933, in which the creditors had an equitable interest, and therefore, in violation of the creditors' equitable rights, to contend that they were without a remedy until the receiver was appointed, more than four years later, is to run head-on into the generally accepted maxim that for every wrong there is a remedy. The fact is that they at all times had a remedy. They could have applied for a receiver at any time during that period. Since this is true, it might well be sufficient to sustain the result arrived at by the trial judge in this case without resorting to the legal statute of limitation. This proceeding, though statutory in form, is governed wholly by equitable principles, and we could not readily take issue with the chancellor had he held

that the creditors slept so long upon their rights that the doctrine of laches applies.

We are not persuaded, however, that the creditors could not have brought individual actions after the transfer had taken place, or that the remedy through a liquidating receivership was the exclusive remedy. Such an action, of course, would have necessarily been directed to enforcing a re-transfer to the corporation, or it might have been in the nature of a creditor's bill; at all events, an equitable proceeding, grounded upon the fact that the defendants had taken, and were holding, property in which the plaintiff and all other creditors had a trust interest.

We are aware, of course, that the general rule is that a simple contract creditor cannot maintain an action to set aside a fraudulent conveyance until he has reduced his claim to judgment. Appellant cites a great array of cases from other jurisdictions to this effect, and we have so held in a number of cases, among them, in *O'Day v. Ambaum*, 47 Wash. 684, 92 Pac. 421, 15 L. R. A. (N. S.) 484; *Allen v. Kane*, 79 Wash. 248, 140 Pac. 534. In many jurisdictions, the creditor must further show that he has issued execution and that it was returned *nulla bona*. But the general rule does not prevail in all jurisdictions, and in those where it does prevail it is subject to well-recognized exceptions. This statement is grounded upon such decisions as the following, although many others might be cited: *Simonton v. Simonton*, 33 Idaho 255, 193 Pac. 386; *Security Savings & Trust Co. v. Portland Flour Mills Co.*, 124 Ore. 276, 261 Pac. 432; *Wyman & Co. v. Farmers Elevator Co.*, 57 S. D. 377, 232 N. W. 259; *Hayden v. Thompson*, 71 Fed. 60; *Cobb v. Interstate Mortgage Corp.*, 20 F. (2d) 786; *Wyman v. Wallace*, 201 U. S. 230, 50 L. Ed. 738, 26 S. Ct. 495.

These cases hold that, where the creditor is in posi-

tion to assert an equitable interest in the property, there is no good reason, in a code state where there is but one form of civil action, why a simple contract creditor may not sue to recover his indebtedness and, in the same action, avail himself of the equitable power of the court to pursue property which could not be reached by an action at law. We quote from *Simonton v. Simonton, supra:*

"Numerically the weight of authority is that a court of equity will not entertain a creditor's bill until after the creditor has reduced his claim to judgment in a court of law. (15 C. J. 1388, sec. 16; 8 R. C. L. 20, sec. 24; extended note to *Ziska v. Ziska,* 20 Okl. 634, 95 Pac. 254, 23 L. R. A., N. S., 1.) The rule originally, and still in many jurisdictions, required the creditor to exhaust every legal remedy before he would be permitted to resort to the interposition of equity for relief. The reason for the rule which required the creditor to reduce his claim to judgment before pursuing property which had passed out of the debtor's hands, or, in other words, which denied him the right to proceed in equity until he should have reduced his claim to judgment in a court of law, was that the debtor was entitled to have the legal action tried before a jury. It is apparent that under the code practice this reason fails, for the distinction between actions at law and suits in equity is abolished and the same court administers both legal and equitable relief in a civil action, and if in the same action it is necessary to determine both equitable issues and law issues of fact, the court will determine the equitable issues of fact and, unless the same is waived, will impanel a jury to try out the legal issues of fact. It must be conceded, however, that the authorities are not at all harmonious, some courts still even under the code maintaining the old distinction. Other courts, however, have boldly departed from the old rule, and under the code system permit a simple contract creditor to recover a judgment for the indebtedness and in the same action avail himself of the equitable power of the court to pursue property which could not be reached in an action at

law. (*Shirley v. Waco etc. Co.*, 78 Tex. 131, 10 S. W. 543; *Miller v. Hughes*, 33 S. C. 530, 12 S. E. 419; *Dawson Bank v. Harris*, 84 N. C. 206; *Vail v. Hammond*, 60 Conn. 374, 25 Am. St. 330, 22 Atl. 954; *First Nat. Bank of Globe v. McDonough*, 19 Ariz., 223, 168 Pac. 635; *Morse v. Slason, supra* [13 Vt. 296]; note, 23 L. R. A., N. S. 84; 8 R. C. L. 25, sec. 29; 15 C. J. 1388, sec. 14; *Fidelity Savings & Loan Assn. v. Reese*, 41 S. D. 546, 171 N. W. 812.)

"We are of the opinion that the latter is the more just and enlightened view, and represents the trend of modern authority. It is in keeping with the spirit of the code, prevents circuity of action, avoids a multiplicity of suits, saves needless delay and expense, and promotes a more speedy and efficient administration of justice."

The *Simonton* case was decided in 1920. The quotation we have made from it may also be found, approved, in *Wyman Co. v. Farmers Elevator Co., supra*, decided in 1930.

Some of the exceptions to the general rule are by no means of recent origin, and this is particularly true of cases where the creditor has an equitable interest in the property transferred. For an early discussion of this exception, see *Case v. Beauregard*, 101 U. S. 688, 25 L. Ed. 370, decided by the supreme court of the United States in 1879. It is said in this opinion:

"But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies."

For a comparatively recent case to the same effect and further holding that, where the trust fund theory prevails, the insolvency of the corporation of itself justifies a creditor's suit without his first having obtained a judgment at law, see *Security Savings &*

*Trust Co. v. Portland Flour Mills Co.,* 124 Ore. 276, 261 Pac. 432.

The Sand Point Golf Club was insolvent on March 14, 1933, and, in fact, the evidence is undisputed that it has been insolvent at all times since 1930. No rule of law, or, perhaps, we should say, of equity, is more firmly established in this state than that which declares that the assets of an insolvent corporation constitute a trust fund for the benefit of its creditors, and, in fact, it is because of this rule that the transfer of March 14, 1933, constituted an unlawful preference. The creditors, other than defendants, had an equitable interest in the property which the defendants took on March 14, 1933; and under our code we have but one form of civil action, in which both legal and equitable relief can be given. In our opinion, an individual creditor might have brought an action to protect his right, even though his claim had not been reduced to judgment. Without doubt, he could have had a receiver appointed as early as March 15, 1933, the day after the unlawful transfer took place, and upon any day thereafter for the next four or more years. He was entitled to that as a matter of right. *Smith v. Solomon Valley Dredging Co.,* 147 Wash. 69, 264 Pac. 1009.

Assuming that the ordinary statutes of limitation are applicable to these claims, we perceive no good reason why they should be tolled until the actual appointment of a receiver.

We are of the opinion that the ordinary statute of limitation applies. No cause of action arose when the receiver was appointed. He sues to vindicate rights which were infringed on March 14, 1933. The limitation statute has run against the corporation and against the creditors. Where, by operation of statutory law,

the claims of the creditors were assigned to the receiver for collection, he took them subject to all existing defenses and disabilities. In a very well considered opinion rendered by the supreme court of Kentucky in 1856 (*Lexington Life etc. Ins. Co. v. Page & Richardson,* reported in 17 Monroe (Ky.) 412, and in 66 Am. Dec. 165, 176), where a *receiver* was attempting to recover illegal dividends from stockholders on the trust fund theory, the court said:

"The right of action for the recovery of these funds was in the corporation; it existed as soon as they were paid over to the stockholders, and the time of limitation commenced running from that period. When the bar became complete against the corporation, it was also complete against its creditors. If the debtor cannot recover a demand because it is barred by the statute of limitations, most certainly the creditor of the debtor cannot compel its payment in discharge of his debt, on the ground that his cause of action had accrued within five years. His cause of action exists against his debtor, and he can only follow the funds of the latter into the hands of third persons, when it is his only remedy for the recovery of his debt; and his rights then, in the pursuit of such funds, do not exceed those that belong to his debtor."

And this, we think, is the case here.

It is not necessary to decide the disputed question as to whether the three-year limitation governing actions for the recovery of personal property or the two-year limitation prescribed in the catch-all section (§ 165) for actions not otherwise provided for applies. This suit was not commenced until more than four years after the causes of action therein sought to be maintained arose, and was, therefore, outlawed in either case.

Finally, we have considered the appellant's contention that our recent decision in the case of *Earle v.*

*Froedtert Grain & Malting Co.,* 197 Wash. 341, 85 P. (2d) 264, is decisive in his favor. In our opinion, it is not at all in point.

The judgment appealed from is affirmed.

BLAKE, C. J., BEALS, MILLARD, and SIMPSON, JJ., concur.

