[Nos. 21761–5–I; 21945–6–I.   Division One.   December 19, 1988.]

GLENDALE REALTY, INC., ET AL, *Appellants*, v. TENNIS WORLD OF SEATTLE, INC., *Defendant,* SEATTLE–FIRST NATIONAL BANK, ET AL, *Respondents.*

*Anthony Schwab,* for appellants.

*Timothy Cary, Kimberly W. Osenbaugh,* and *Bogle & Gates,* for respondent Royal Bank of Canada.

*Craig Miller* and *Davis, Wright & Jones,* for respondents O'Loughlin and Dumas.

WILLIAMS, J.—Glendale Realty and Jay Dishnow, receiver for Tennis World, appeal from summary judgments dismissing their claims against Royal Bank of Canada, Liam P. O'Loughlin, Gregory M. Dumas, Dumas Hotels, Ltd., and Davis, Wright & Jones, for the return of preference payments made by Tennis World. We affirm the judgment dismissing the Royal Bank and reverse the other judgments of dismissal.

Glendale, a default judgment creditor against Tennis World, learned that Tennis World had sold its assets in August 1982 and was insolvent. On November 2, 1982, Glendale commenced an action against Tennis World and John Doe defendants, praying for appointment of a receiver to recover preferential payments made from the proceeds of the August asset sale. On December 16, 1982, Davis, Wright & Jones, attorneys for Tennis World, filed a memorandum opposing the appointment of a receiver because:

"(1) there is no property for the receiver to take charge of, and thus no receiver could be appointed under RCW 7.60.010; (2) there is no need for a receiver; and (3) there are no funds from which a receiver can be paid or a bond can be obtained."

Tennis World also filed its answer, requesting dismissal of Glendale's complaint on several grounds, including the affirmative defense that the court did not have subject matter jurisdiction. The court appointed Jay Dishnow receiver on January 27, 1983.

Dishnow contacted Tennis World's attorneys for information about the disbursements from the August asset sale and received letters from them dated February 18 and March 7, 1983, supplying information about who had received disbursements, the Royal Bank being among those listed as recipients. Not listed were O'Loughlin and Dumas, who were the principal shareholders in Tennis World, Dumas Hotels, and Davis, Wright & Jones. The March 7 letter did state that O'Loughlin and Dumas intended "to submit substantial claims against the receivership estate" and a closing statement attached to that letter showed $77,641 had been paid to Tennis World from the proceeds of the asset sale. In addition to representing Tennis World, Davis, Wright & Jones was representing O'Loughlin, Dumas and Dumas Hotels. The Royal Bank was represented by other counsel.

Discovery was not begun until December 8, 1983, when Anthony Schwab, Glendale's attorney, was appointed attorney for the receivership on a contingency fee basis.

The discovery effort was met by a motion for a stay filed by Tennis World's attorneys on January 30, 1984. The motion was denied but the receiver was ordered to be joined as a real party in interest with the duty of filing an amended complaint within 120 days.

An amended complaint was filed on March 29, 1984, that asserted claims against, among others, the Royal Bank, O'Loughlin, Dumas, and Davis, Wright & Jones. The claims against O'Loughlin and Dumas were limited to allegations that they had abused the corporate form of Tennis World and were personally liable for preference payments that could not be returned. Service was accomplished on the Royal Bank on March 1, 1985, and on O'Loughlin and Dumas on June 25, 1985. Meanwhile, the receiver moved for summary judgment against Davis, Wright & Jones for fees paid during the preference period. Judgment was granted in the amount of $4,000 on December 20, 1984.

As a result of discovery responses provided by the Royal Bank on February 20, 1987, the receiver learned that the $77,641 disbursement to Tennis World was deposited in the Coquitlam, British Columbia, branch of Royal Bank the day after the disbursement. Checks were drawn by O'Loughlin and Dumas, as president and treasurer of Tennis World, respectively, from that account on the same day for deposit in other accounts under their personal control. The Dumas Hotels, Ltd., account was one of those accounts. As a result, the receiver was granted leave to amend his complaint to add Dumas Hotels as a party and add preference payment claims against O'Loughlin and Dumas on July 31, 1987. The second amended complaint was promptly filed thereafter.

On January 6, 1988, O'Loughlin, Dumas and Dumas Hotels moved for summary judgment, contending that the claims against them were time barred under RCW 23.72.020[1] and should be dismissed. Royal Bank joined in

---

[1] "If not otherwise limited by law, actions in the courts of this state by a receiver to recover preferences may be commenced at any time within but not

the motion. Summary judgment was granted by a judge different than those who had acted previously on the case. Reconsideration was denied. Upon motion, the $4,000 summary judgment against Davis, Wright & Jones was vacated and the claim against the firm was likewise dismissed.

■ Both the statutory and decisional law regarding recovery of preference payments made by insolvent corporations is sparse. *See* RCW 23.72. This is understandably so in view of federal supremacy in bankruptcy, U.S. Const. art. 1, § 8. Even so, state insolvency proceedings are sometimes used. In *Peeples v. Hayes,* 4 Wn.2d 253, 257–59, 104 P.2d 305 (1940) (quoting *Morris v. Orcas Lime Co.,* 185 Wash. 126, 53 P.2d 604, *cert. denied,* 299 U.S. 559 (1936)), the Supreme Court spoke to the time limitation of the predecessor of RCW 23.72.020:

> ■ "The limitation is not one that goes to the remedy of a defendant, like the ordinary statute of limitation, but it goes to the cause of action or right to sue. The time prescribed—six months from the time of filing the application for appointment of the trustee for the *commencement* of the action—is a condition to the enforcement of the liability or the trustee's right of recovery, an element in the right itself. The right falls with the failure to commence the action within the allotted time."
>
> . . .
>
> ■ Furthermore, the limitation is not for the benefit of those against whom actions are brought, but it is primarily for the benefit of the creditors of the insolvent corporation on whose behalf the action is prosecuted. *Its primary purpose is to insure that their rights in the trust fund will be enforced promptly and without unreasonable delay.*
>
> . . .
>
> . . . This proceeding, though statutory in form, is governed wholly by equitable principles . . .

(Some italics ours.)

Viewed in this light, it is apparent that the claims against O'Loughlin, Dumas, Dumas Hotels and Davis, Wright &

---

after six months, from the date of application for the appointment of such receiver."

Jones are not time barred by RCW 23.72.020. The application for appointment of a receiver contained in Glendale's complaint of November 2, 1982, was timely made within 4 months of the alleged preference payments. RCW 23.72-.030. The appointment of the receiver was not unduly prolonged thereafter. With Tennis World's attorneys reporting that there were no assets to be recovered and resisting further proceedings, it is not surprising that some time was consumed in securing the services of an attorney on a contingency fee basis. Upon retention of counsel, the receiver proceeded reasonably in the light of the limited information provided by Davis, Wright & Jones. Not until the preferential payments were discovered in the Coquitlam bank account, as a result of Royal Bank's discovery responses, did the receiver have knowledge or a reasonable basis to believe that the payments ended up in the hands of O'Loughlin, Dumas and Dumas Hotels.

Because the Supreme Court has recognized the RCW 23.72.020 is governed wholly by equitable principles, *Peeples v. Hayes, supra,* the delay in fully and timely disclosing the receipt of preference payments by O'Loughlin, Dumas, Dumas Hotels, and Davis, Wright & Jones will not be permitted to push the receiver's claims against those parties outside the limitation period. Moreover, CR 15(c) allows for the relation back of amended pleadings when the same transaction is involved, when the party added by the amendment has received sufficient notice of the action that its defense will not be prejudiced, and when that party should have known that it would have been a party but for a mistake. The amended complaints adding O'Loughlin, Dumas, Dumas Hotels and Davis, Wright & Jones satisfy these standards. Not joining all of the parties in the original pleading was excusable. *Haberman v. WPPSS,* 109 Wn.2d 107, 173, 744 P.2d 1032, 750 P.2d 254 (1987).

The foregoing does not apply to the Royal Bank, which was listed in both the February 18 and March 7 letters as

having been paid $1,140,082 from the asset sale. No representation was made that it was a secured creditor. Specifically, the February 18 letter stated that Davis, Wright & Jones was "not in a position to advise as to the security interests which may be asserted" by the Royal Bank. Any questions the receiver may have had about the Royal Bank being à secured creditor could have been easily resolved by simple examination of public records. There are no equitable considerations warranting an exception to the 6–month limitation period for the claim against the Royal Bank. As to it, the claim was time barred by RCW 23.72.020.

Glendale argues that it has standing independent of the receiver to assert preference claims against the Royal Bank. Because Glendale assigned its claims to the receiver when it sought his appointment, it has no independent standing. RCW 23.72.030. The remaining arguments are insubstantial.

The summary judgment dismissing all claims against the Royal Bank is affirmed. The summary judgments dismissing claims against O'Loughlin, Dumas, Dumas Hotels, and Davis, Wright & Jones are reversed and remanded for further proceedings consistent with this opinion.

WEBSTER, J., and SCHUMACHER, J. Pro Tem., concur.

Review denied by Supreme Court June 6, 1989.